LILLIAN E. TAYLOR, APPELLANT, V. MARSHALL TAYLOR, APPELLEE.

348 N.W.2d 887

Filed May 25, 1984. No. 83-173.

Van A. Schroeder, for appellant.

John E. Rice, for appellee.

BOSLAUGH, WHITE, HASTINGS, and SHANAHAN, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.

Lillian E. Taylor (Lillian), petitioner-appellant, has appealed to this court from a decree entered by the district court for Sarpy County, Nebraska, dissolving the marriage of the appellant and Marshall Taylor (Marshall), respondent-appellee.

The trial court awarded Lillian custody of the three minor children, set child support at $150 per month per child, and awarded her alimony in the amount of $300 per month for 60 months, terminable upon her remarriage or death. Lillian was awarded the family home, two older model automobiles, one-half of the savings and checking accounts, and the household goods in her possession. Marshall was awarded the family business, including equipment, life insurance policies, a vacant lot, one-half of the savings and checking accounts, and the household items in his possession. The decree made no mention of the military retirement pay to which Marshall was entitled.

Lillian assigns as error (1) the amount and duration of alimony, (2) the division of property, particularly the failure to award her a share of the military pension, and (3) the failure of the trial court to award an attorney fee.

The record reveals that the parties were married for 23 years and had three minor children. At the time of trial Marshall was 45 years old. He was retired from the U.S. Air Force, with the rank of senior master sergeant, after 20 years of military service. He was receiving a military pension in the amount of $926 gross and $854 net per month and was employed in the family-owned business, Lilmar Beauty Services, Inc. He drew no salary until September 1981.

Lillian was 43 years of age at the time of trial. She had graduated from high school and then from beauty school and was a registered beautician in Nebraska and Illinois. Since graduation from beauty school, she worked as a self-employed beautician except for a 3-year period between 1960 and 1963 when she was employed by a beauty salon. She has worked full time at Lilmar since 1973. She did not draw a salary until September 1981, when she earned a net salary of $439.61 per month as ordered by the trial court.

The primary issue on appeal is whether Marshall's military retirement pay should have been considered by the trial court in determining the alimony and division of property.

The law applicable to the disposition of military pensions has undergone many changes over the past 4 years. Until 1980 the law in Nebraska was that pensions were to be considered as a source of alimony and maintenance.

In 1980 the Legislature amended Neb. Rev. Stat. § 42-366 (Reissue 1978) to provide as follows:

> (8) If the parties fail to agree upon a property settlement which the court finds to be conscionable, the court shall order an equitable division of the marital estate. The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested.

In *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981), this court determined that by virtue of § 42-366(8) (Cum. Supp. 1982) "the law of this state now requires that pension plans and retirement plans shall be included as part of the marital estate for the purposes of the division of property . . . ." *Id.* at 151, 306 N.W.2d at 848.

In *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), the U.S. Supreme Court held that federal law precludes a state court from awarding a nonmilitary spouse a portion of the military spouse's government pension. The Court pointed out that "the plight of an ex-spouse of a retired service member is often a serious one," *id.* at 235, but that it was up to Congress to devise a remedy.

Subsequently, this court decided the case of *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982), in which we pointed out that as a result of *McCarty*, military pensions were exempted from the provisions of

§ 42-366. We pointed out that the court could still consider the pension as a source of income for the military spouse's own maintenance and as a source of alimony for the nonmilitary spouse, even though the court could not award an interest in the military pension to the nonmilitary spouse.

Congress then passed the Uniformed Services Former Spouses Protection Act, Pub. L. No. 97-252, § 1002(a), 96 Stat. 730 (1982) (codified at 10 U.S.C. §§ 1401 et seq. (1982)) (USFSPA). The act provides, among other things:

> Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

10 U.S.C. § 1408(c)(1).

The legislative history reveals:

> The purpose of this provision is to place the courts in the same position that they were in on June 26, 1981, the date of the *McCarty* decision, with respect to treatment of non-disability military retired or retainer pay. The provision is intended to remove the federal pre-emption found to exist by the United States Supreme Court and permit State and other courts of competent jurisdiction to apply pertinent State or other laws in determining whether military retired or retainer pay should be divisable [sic]. Nothing in this provision requires any division; it leaves that issue up to the courts applying community property, equitable distribution or other principles of marital property determination and distribution. This power is returned to the courts retroactive to June 26, 1981. This retroactive application will at least afford individuals who were divorced (or had decrees modified) during the interim period between June 26, 1981 and the

effective date of this legislation the opportunity to return to the courts to take advantage of this provision.

S. Rep. No. 502, 97th Cong., 2d Sess. 16, *reprinted in* 1982 U.S. Code Cong. & Ad. News 1596, 1611.

The effect of the USFSPA is that nondisability military pensions need no longer be treated differently than nonmilitary pensions.

The pension fund is clearly the most valuable asset of the parties. Since the trial court did not specifically award the interest in the retirement pay to the appellee, we do so at this time. Once we consider the pension, it is clear that equity requires that we make an adjustment in the award to the appellant.

This court has held on numerous occasions that alimony and distribution of property rights have different purposes in marriage dissolution proceedings, but in a proper case they may be considered together in reaching an award that is just and equitable. In *McBride v. McBride*, 211 Neb. 459, 319 N.W.2d 72 (1982), we held that the method of considering a husband's pension fund by awarding alimony to the wife in a specified amount for her lifetime falls within the approved methods for dealing with pension funds set forth in *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981).

After a consideration of all the facts and circumstances, we are of the opinion that the decree should be modified to provide for an alimony payment of $300 per month to the appellant for her lifetime.

Appellant is awarded $750 for the services of her attorney in this court.

AFFIRMED AS MODIFIED.