KENNETH J. KRAMER, APPELLEE,
v. KATHLEEN J. KRAMER, APPELLANT.
KATHLEEN J. KRAMER, APPELLANT, v.
KENNETH J. KRAMER, APPELLEE.

567 N.W.2d 100

Filed May 23, 1997.    Nos. S-95-728, S-96-629.

Peter C. Bataillon and Kelly K. Brandon, of Sodoro, Daly & Sodoro, for appellant.

Robert J. Hovey, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

STEPHAN, J.

In a contested dissolution proceeding which was finally resolved by the Nebraska Court of Appeals in 1993, see *Kramer v. Kramer*, 1 Neb. App. 641, 510 N.W.2d 351 (1993) (*Kramer I*), Kathleen J. Kramer (wife) was awarded a 46-percent interest in the monthly military retirement pension of Kenneth J. Kramer (husband). In August 1994, the Department of Veterans Affairs awarded service-connected disability benefits to the husband, retroactive to August 1, 1992. Under federal law, receipt of disability benefits operates as a waiver of an equal amount of regular retirement benefits to which the veteran would otherwise be entitled. Both of these cases involve the effect of this waiver on the wife's interest in the military retirement pension.

In case No. S-95-728, the husband alleges that the wife was "unjustly enriched" by receipt of her 46-percent interest in the retirement pension during the retroactive period of the disability award. On May 17, 1995, the district court for Sarpy County granted his motion for summary judgment, denied her motion for summary judgment, and entered judgment in favor of the husband against the wife in the amount of $7,897.28.

Case No. S-96-629 involves an application filed by the wife requesting modification of the decree of dissolution on the ground that the judgment in favor of the husband and the reduced future value of her interest in the retirement pension which resulted from the disability award amounted to a material change in circumstances justifying an increase in alimony. The district court dismissed the application on October 16, 1995.

The wife perfected timely appeals from both orders to the Court of Appeals. Pursuant to our authority to regulate the caseloads of the Court of Appeals and this court, we removed the cases to our docket. We consolidated them for oral argument because they arise from the same facts.

We affirm the judgment of the district court in case No. S-95-728 as modified, and reverse, and remand case No. S-96-629 to the district for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

### ORIGINAL DECREE

On January 11, 1991, the district court for Sarpy County entered a decree dissolving the 26-year marriage of Kenneth J. and Kathleen J. Kramer. The decree included the following provision:

> That the [husband] shall pay as alimony to the [wife] the sum of $750.00 per month commencing on the 1st day of June, 1990 and continuing in a like amount on the 1st day of each month thereafter until the death of the [wife] or the [husband], whichever shall occur first. That this award of alimony is not to terminate automatically upon the remarriage of the [wife]. This alimony may be modified upon a change of circumstances to be considered by the court at some future date, together with any other relevant circumstances in regard to the earning capacity of either of the parties.
>
> That in consideration of the provision, [the husband] is awarded all rights and entitlement to his United States Air Force Military Retirement Pension.

The record reflects that this alimony award was intended to constitute the wife's interest in the military retirement pension in accordance with our decision in *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982). The decree also required the husband to pay additional alimony in the amount of $1,200 per month for 1 year and $900 per month thereafter, continuing until the death of either party or the remarriage of the wife.

The husband appealed, contesting the amount and duration of alimony and the award of attorney fees. The wife cross-appealed, contending that the district court erred in the manner in which it awarded her interest in the military pension.

### APPEAL AND MODIFIED DECREE

In *Kramer I*, the Court of Appeals affirmed the award of what it characterized as "traditional alimony," 1 Neb. App. at 642, 510 N.W.2d at 353, in the amount of $900 per month but found that the provision for termination only upon death or remarriage was unreasonable. It ordered a modification to provide that this alimony would terminate on June 1, 2005, if not previously

terminated by the death of one of the parties or the wife's remarriage.

Addressing what it characterized as the *"Pyke* alimony" challenged by the wife's cross-appeal, the Court of Appeals found that the "greatest accumulation of value" during the marriage was the military pension. *Id.* at 646, 510 N.W.2d at 355. The court further reasoned that under the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. § 1401 et seq. (1988 & Supp. II 1990) (USFSPA), and our holding in *Taylor v. Taylor,* 217 Neb. 409, 413, 348 N.W.2d 887, 889 (1984), "nondisability military pensions need no longer be treated differently than nonmilitary pensions" in the division of marital assets. In *Kramer I,* the Court of Appeals stated:

> In our view, the provision in the Nebraska statute, [Neb. Rev. Stat.] § 42-366 [(Reissue 1988)], that pensions be treated as property subject to division, coupled with the USFSPA, means that as a general proposition, a military pension must be viewed primarily as property to be divided. Thus, although *Pyke* alimony can be used, it should not be used in a manner which deprives the receiving spouse of the benefits which would ordinarily inure from the division of property. Typically, when marital property is divided, each party has the benefit of receiving a fixed amount or value which potentially can appreciate. Additionally, each party's share is not subject to being later reduced or taken away entirely because of circumstances which occur in the life of the former spouse.

1 Neb. App. at 646-47, 510 N.W.2d at 355.

The Court of Appeals noted that under the *Pyke* alimony award, the husband would receive the benefit of future increases in the retirement pension but the wife would not. The court held that a fixed percentage interest in the pension should be awarded to each party, stating:

> We believe that the intent of Nebraska law with respect to pensions is to treat them as marital property . . . and the fact that a pension is a military pension should be a fact of little consequence. *Pyke* alimony, as awarded by the trial court in this case, accords military pensions substantially different treatment, with potentially great adverse conse-

quences to Kathleen. We believe that in order to justify the abrogation of the typical benefits of property division (certainty of amount, the chance for future appreciation of one's share, and complete ownership) by utilizing *Pyke* alimony to divide a military pension, the record must establish a compelling need to do so. When there is no such showing, as is the case here, the ultimate test of reasonableness from *Gleason v. Gleason*, 218 Neb. 629, 357 N.W.2d 465 (1984), is frustrated, as is the holding of *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984), that military and nonmilitary pensions are no longer to be treated differently when dividing marital assets. Furthermore, [Neb. Rev. Stat.] § 42-365 [(Reissue 1988)] tells us that when a court is dividing marital assets, property division and alimony "serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties."

For these reasons, we hold that the trial court abused its discretion in awarding Kathleen $750 per month in *Pyke* alimony in lieu of an outright interest in Kenneth's military pension, as Kathleen was deprived of a fair and equitable result with respect to the division of the military pension. Therefore, we reverse paragraph II, dealing with the military pension, of the decree of dissolution and remand this matter to the district court for Sarpy County with directions to award Kathleen 46 percent of Kenneth's military pension under § 1408, which award shall not be subject to modification.

1 Neb. App. at 647-48, 510 N.W.2d at 355-56. The court also ordered that the husband be ordered to maintain a Survivor Benefit Plan under § 1450(f)(4) naming the wife as beneficiary in order to provide security for her interest in the military pension.

Neither party sought further review of the decision of the Court of Appeals. Following remand, on October 21, 1993, the district court entered an order of modification of divorce decree, which contained the following provision:

That as of June 1, 1990 [the wife] is awarded 46% of [the husband's] military pension with the United States

Air Force as provided by 10 U.S.C. § 1408 and which award shall not be subject to modification. [The husband] shall maintain his survivor benefit plan naming [the wife] as the beneficiary. [The husband] shall receive the remaining 54% of his military pension.

At the time of the order of modification, the monthly pension benefit was approximately $1,820, and the value of the 46-percent interest awarded to the wife was approximately $837 per month.

## CASE NO. S-95-728:
### HUSBAND'S UNJUST ENRICHMENT CLAIM

In August 1992, the husband filed an application for service-connected disability benefits. There is nothing in the record to indicate when the wife first became aware of this application.

On August 19, 1994, the Department of Veterans Affairs granted the husband service-connected disability benefits. The department made the benefits retroactive to August 1, 1992. The husband received the following disability benefits:

| Dates | Monthly Benefits |
|---|---|
| August 1 to November 30, 1992 | $614 |
| December 1, 1992, to November 30, 1993 | 632 |
| December 1, 1993, to July 31, 1994 | 648 |

On October 26, 1994, the husband filed an amended petition in the district court for Sarpy County praying for a judgment against the wife in the amount of $7,897.28, plus interest and court costs, under a theory of unjust enrichment. The husband alleged that he had made monthly payments to the wife from August 1, 1992, through November 30, 1994, in the amount of 46-percent of the full amount of the retirement pension. He further alleged that because this pension was, by operation of federal law, reduced by the amount of his disability benefits during this period, he had overpaid the wife by $7,897.28.

The wife filed an answer denying the allegations of unjust enrichment and alleging that at all relevant times there was an enforceable judgment which entitled her to receive 46 percent of the military pension. She also alleged that the husband "has not come into this court with clean hands." He filed a reply specifically denying this allegation.

On March 17, 1995, the husband filed a motion for summary judgment. The wife filed a motion for summary judgment on April 5. At the hearing on both motions on April 6, the husband's counsel asked the court to take judicial notice of "10 USC 1408 and Title 38 USC, . . . the [original] decree of dissolution of marriage dated January 11, 1991, and the order of modification dated October 21, 1994." The wife's counsel raised no objection. The husband then offered his own affidavit, which contained a statement that the allegations in his amended petition were true. That statement was followed by specific statements concerning the provisions of the original dissolution decree, the action taken by the Court of Appeals, and the amounts by which he claimed to have overpaid the wife as a result of the retroactive award of service-connected disability benefits. (The affidavit refers to a letter from the Department of Veterans Affairs supposedly attached as "Attachment A," but the letter does not appear in the bill of exceptions or in the copy of the affidavit contained in the transcript on appeal.) .

The wife's attorney objected to the affidavit on the ground that "there are some factual matters in there which Mr. Kramer may have knowledge of, but there are other matters which are conclusions of law and are assumptions." The court received the affidavit in evidence, noting that it would not consider any "conclusions and assumptions."

The wife offered no evidence in opposition to the husband's motion. Her counsel specifically advised the court that counsel did not intend to offer any evidence in support of the wife's motion, stating:

> There is no need for any factual evidence. We have no affidavits or things of that nature. The portions you have taken notice of are the same ones I would be asking, and I just filed a motion for summary judgment so we can get the whole thing resolved without coming back here again.

On May 17, 1995, the district court entered an opinion and order granting the husband's motion for summary judgment, denying the wife's motion, and entering judgment in favor of the husband against the wife in the amount of $7,897.28, plus costs.

CASE NO. S-96-629:
WIFE'S APPLICATION FOR MODIFICATION

On August 25, 1995, the wife filed an amended application to modify decree. In this application, she alleged that at the time of the October 21, 1993, modification, the military retirement pension was approximately $1,820 per month and that her 46-percent entitlement had a monthly value of approximately $837.20. She alleged that she had not been aware of the husband's application for service-connected disability benefits in August 1992. She alleged the amounts by which the military retirement pension was decreased by the husband's service-connected disability benefits and further alleged her expectation that "the aforesaid service connected disability compensation will equal or exceed the amount of $648.00 for the period after October 1, 1994." She also alleged that the judgment entered against her in the unjust enrichment action "represents the retroactive portion of respondent's disability award which was paid to [the wife] pursuant to the Order of October 21, 1993, which modified the Decree herein." She alleged that the decreased value of her 46 percent of the nondisability pension together with the judgment entered against her in the unjust enrichment action constituted a material and substantial change of circumstances justifying an increase in the alimony she receives from the husband.

The husband filed a general demurrer, which was sustained by the district court on October 16, 1995. In its opinion and order filed on that date, the district court stated:

> While the Court is aware of the facts of this case, which clearly indicate that the financial positions between the parties have materially changed due to the [husband's] award of disability and corresponding reduction of his pension, the law in Nebraska is clear and does not support [the wife's] theory. As this Court stated in an Opinion and Order from the earlier litigation between these parties on [the husband's] unjust enrichment claim, the rule in this state is that disability compensation may not be considered by the courts in awarding alimony or support. In Taylor v. Taylor, 217 Neb. 409, 348 N.W.2d 887 (1984), the Nebraska Supreme Court held that only **nondisability**

military pensions were to be treated as marital property. This rule has endured to the present date. Accordingly, if disability compensation is exempt from being subject to alimony or support, it is only reasonable to assume that a government award of disability compensation may not be relied upon as the material and substantial change in circumstances required to modify a decree.

The wife elected to stand on her amended application to modify, and the district court dismissed it on May 21, 1996.

## ASSIGNMENTS OF ERROR

In case No. S-95-728, the wife contends that the district court erred in (1) determining that she was unjustly enriched, (2) not barring the husband's action on the basis of the unclean hands doctrine, and (3) failing to grant her motion for summary judgment.

In case No. S-96-629, the wife contends that the district court erred in sustaining the husband's demurrer and dismissing her application to modify the alimony provisions of the decree of dissolution based upon a material change in the financial circumstances of the parties.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Tess v. Lawyers Title Ins. Corp.*, 251 Neb. 501, 557 N.W.2d 696 (1997); *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997).

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the conclusions of the pleader. *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997); *Baltensperger v. Wellensiek*, 250 Neb. 938, 554 N.W.2d 137 (1996). In determining whether a cause of action has been stated, a petition is to be construed liberally. If as so construed the petition states a cause of action, a demurrer based on the failure to state a cause of action is to be overruled. *State ex rel. Keener v. Graff*, 251 Neb. 571, 558 N.W.2d 538

(1997); *Crider v. Bayard City Schools*, 250 Neb. 775, 553 N.W.2d 147 (1996). A statement of facts sufficient to constitute a cause of action, as used in Neb. Rev. Stat. § 25-806(6) (Reissue 1995), means a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff. *Leader Nat. Ins. v. American Hardware Ins.*, 249 Neb. 783, 545 N.W.2d 451 (1996); *Carlson v. Metz*, 248 Neb. 139, 532 N.W.2d 631 (1995).

In addition, whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *State ex rel. Stenberg v. Moore*, 251 Neb. 598, 558 N.W.2d 794 (1997); *Sawyer v. State Surety Co.*, 251 Neb. 440, 558 N.W.2d 43 (1997).

## ANALYSIS

These cases require us to determine the extent to which federal disability benefits payable to a military retiree may be distributed or otherwise taken into consideration by a state court in an action for dissolution of marriage. Before addressing the specific issues raised in these appeals, it is necessary to review the development of federal and state law in this area.

A starting point is the decision of the U.S. Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), in which the Court addressed the issue of whether nondisability benefits payable to a military retiree could be included as community property under California law and would therefore be subject to distribution in dissolution of marriage proceedings. The Court noted that the subject of domestic relations is generally within the purview of state law and that unless state law in this area would cause " ' " "major damage" to "clear and substantial" federal interests,' " it will not be superseded by the Supremacy Clause of the U.S. Constitution. 453 U.S. at 220. However, the Court concluded that California community property laws did pose such a risk to federal interests, because federal statutes clearly provided that military retirement benefits constituted the personal property of the veteran and created no entitlement for the veteran's spouse. The Court therefore found that federal law precluded California

courts from distributing any portion of a nondisability retirement pension to the former spouse of a military retiree. The Court recognized that its decision could harshly affect the ex-spouse of a military retiree but noted that this problem could only be resolved through new federal legislation.

Nebraska law requires that pension and retirement plans shall be included in the marital estate for purposes of division of property at the time of dissolution. Neb. Rev. Stat. § 42-366 (Reissue 1993). In *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982), decided a few months after *McCarty*, we recognized that *McCarty* prevented inclusion of military pensions within the marital estate. We then noted:

> However, a trial court, in determining what, if any, alimony should be awarded a spouse, may recognize that the spouse ordered to pay the alimony may have, by way of income for his own maintenance and support, a military pension or may have the proceeds of a military pension from which he may be able to make alimony payments, although the court cannot award an interest in the pension to the nonmilitary spouse.

212 Neb. at 121, 321 N.W.2d at 911.

In response to *McCarty*, Congress enacted the USFSPA, 10 U.S.C. § 1408 et seq., in 1982. The act provides in part:

> Subject to the limitations of this section, a court may treat disposable retired pay payable to a [former service] member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

§ 1408(c)(1). The statute defines " 'disposable retired pay' " as "the total monthly retired pay to which a member is entitled" (other than the retired pay of a member retired for disability under chapter 61 of this title), less certain other deductible amounts, including amounts which "are deducted from the retired pay of such member . . . as a result of a waiver of retired pay required by law in order to receive compensation under title 5 or title 38." § 1408(a)(4).

On our first occasion to consider the effect of the USFSPA on Nebraska law, we held in *Taylor v. Taylor*, 217 Neb. 409, 413,

348 N.W.2d 887, 889 (1984), that "nondisability military pensions need no longer be treated differently than nonmilitary pensions." Based upon our finding that the husband's military pension should have been taken into consideration in the division of marital assets, we modified the decree in *Taylor* by increasing the alimony award by $300 per month, representing the wife's interest in the military retirement pay.

*McCarty*, *Pyke*, and *Taylor* dealt with *nondisability* retirement benefits. Veterans who suffer a service-connected disability may also be awarded disability benefits calculated according to the seriousness of the disability and the degree to which it impairs the individual's earning capacity. 38 U.S.C. §§ 310, 314, and 331 (1988 & Supp. II 1990) and 355 (1988). In order to receive disability benefits, a military retiree must waive a corresponding amount of military retirement pay. 38 U.S.C. § 3105 (1988). It is to the veteran's advantage to waive retirement pay in order to receive a like amount in disability benefits, because such benefits are exempt from federal, state, and local taxation. 38 U.S.C. § 3101(a) (1988).

The issue of whether a state court may treat the amount of military retirement pay which a veteran waives in order to receive service-connected disability benefits as a part of the marital estate was directly addressed in *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). The *Mansell* Court reasoned that after *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), military retirement benefits could not constitute divisible marital property except to the extent specifically permitted by the USFSPA. The *Mansell* Court held that the language of the statute was precise and limited, permitting state courts to treat only "disposable retired pay" as divisible marital property. Noting that § 1408(a)(4)(B) specifically excludes retirement pay waived in order to qualify for disability benefits from the definition of "disposable retired pay," the Court held that such waived pay could not be treated as divisible marital property under state law. The Court recognized that its interpretation of USFSPA "may inflict economic harm on many former spouses," but expressly declined "to misread the statute in order to reach a sympathetic result when such a reading requires us to do vio-

lence to the plain language of the statute and to ignore much of the legislative history." 490 U.S. at 594.

In language foreshadowing the wife's present circumstance, Justice O'Connor wrote in dissent:

> Today the Court holds that the federal Uniformed Services Former Spouses' Protection Act . . . denies state courts the power to order in a divorce decree the division of military retirement pay unilaterally waived by a retiree in order to receive veterans' disability benefits. The harsh reality of this holding is that former spouses . . . can, without their consent, be denied a fair share of their ex-spouse's military retirement pay simply because he elects to increase his after-tax income by converting a portion of that pay into disability benefits.

490 U.S. at 595.

### HUSBAND'S UNJUST ENRICHMENT CLAIM

We first address the wife's appeal from the order granting the husband's motion for summary judgment, denying her motion for summary judgment, and entering judgment for the husband in the amount of $7,897.28. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Burke v. Blue Cross Blue Shield*, 251 Neb. 607, 558 N.W.2d 577 (1997); *Stones v. Sears, Roebuck & Co.*, 251 Neb. 560, 558 N.W.2d 540 (1997). A party moving for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to a judgment if the evidence was uncontroverted at trial. At that point, the burden of producing evidence demonstrating the existence of a genuine issue of material fact shifts to the party opposing the motion. *Melick v. Schmidt*, 251 Neb. 372, 557 N.W.2d 645 (1997); *Chism v. Campbell*, 250 Neb. 921, 553 N.W.2d 741 (1996).

The only evidence offered by the husband in support of his motion for summary judgment was his own affidavit. We must accept the factual statements contained in the affidavit as true, because the wife offered no evidence in opposition. These state-

ments establish that the husband made monthly payments to the wife in the amount of 46 percent of the full military retirement pension for the period August 1, 1992, through July 31, 1994. As a result of the retroactive award of service-connected disability benefits and the corresponding waiver of a portion of the retirement pension for the retroactive period, the retirement pension was reduced by $614 per month for 4 months, $632 per month for 12 months, and $648 per month for 8 months, a total reduction of $15,224.

While the husband characterizes his claim as one for unjust enrichment, it is really an action in assumpsit for money had and received. Such an action may be brought where a party has received money which in equity and good conscience should be repaid to another. *Wrede v. Exchange Bank of Gibbon*, 247 Neb. 907, 531 N.W.2d 523 (1995). See *Sesostris Temple Golden Dunes v. Schuman*, 226 Neb. 7, 409 N.W.2d 298 (1987). In this circumstance, the law implies a promise on the part of the person who received the money to reimburse the payor in order to prevent unjust enrichment. See *Wrede, supra*. Although founded on equitable principles, an action in assumpsit for money had and received is an action at law. *Wrede, supra*; *Barker v. Wardens & Vestrymen of St. Barnabas Church*, 171 Neb. 574, 106 N.W.2d 858 (1961).

In *Wrede*, we held that there must be a specific legal principle or situation which equity has established or recognized to bring a case within the scope of assumpsit for money had and received. In this case, that legal principle is the Supremacy Clause of the U.S. Constitution, U.S. Const. art. VI, cl. 2, which supersedes state law to the extent that it would cause major damage to significant federal interests. See, *In re Application of Burlington Northern RR. Co.*, 249 Neb. 821, 545 N.W.2d 749 (1996); *Dowd v. First Omaha Sec. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1993).

Thus, the wife was actually overpaid by 46 percent of the waived amounts because of the retroactive award of service-connected disability benefits to the husband and his waiver of a like amount of retirement pension benefits as required by § 3105. To permit her to retain this overpayment would have the

effect of awarding her a percentage of the husband's disability benefits, which is prohibited by § 1408(a)(4)(B) and (c)(1).

The wife's defense of unclean hands is of no avail for two reasons. First, there is no evidence that the husband took any improper or unlawful action. No provision in the original decree or the modified decree prohibited him from exercising his right to apply for service-connected disability benefits or from waiving a corresponding amount of his retirement benefits if his application was approved. To the contrary, the decree awarded the husband "all rights and entitlement to his United States Air Force Military Pension" in consideration of his payment of *Pyke* alimony. Second, even if there were a factual basis for the equitable defense of unclean hands which might permit the wife to retain the overpayments under state law, it would be preempted by federal law for the reasons stated above.

For these reasons, we determine that the district court did not err in overruling the wife's motion for summary judgment and entering summary judgment in the husband's favor in case No. S-95-728. However, in reviewing the record, we note that the judgment in the amount of $7,897.28 represents 46 percent of overpayments made by the husband to the wife from August 1, 1992, through October 1, 1994, a total of 27 months. His affidavit establishes the period in which overpayments were made as August 1, 1992, through July 31, 1994, a period of 24 months. Based upon the affidavit, the total amount of the overpayment would be $7,003.04. Although neither party raised this point on appeal, under our power to address plain error, see, *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997); *Biddlecome v. Conrad*, 249 Neb. 282, 543 N.W.2d 170 (1996), we order that the amount of the judgment entered in the husband's favor be reduced to $7,003.04, and affirm the judgment as modified.

## WIFE'S APPLICATION FOR MODIFICATION OF ALIMONY

In an appellate court's review of a ruling on a general demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of

the pleader. *Talbot v. Douglas County*, 249 Neb. 620, 544 N.W.2d 839 (1996); *Fox v. Metromail of Delaware*, 249 Neb. 610, 544 N.W.2d 833 (1996). In determining whether a cause of action has been stated, the petition is to be construed liberally. If as so construed the petition states a cause of action, the demurrer should be overruled. *Talbot, supra.*

Neb. Rev. Stat. § 42-365 (Reissue 1993) provides that "[u]nless amounts have accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown . . . ." Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985). The determination of good cause necessary for modification of a dissolution decree is a matter of discretion for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. See, *Adrian v. Adrian*, 249 Neb. 53, 541 N.W.2d 388 (1995); *Chamberlin v. Chamberlin*, 206 Neb. 808, 295 N.W.2d 391 (1980).

The legal sufficiency of the wife's amended application to modify decree depends entirely upon whether the USFSPA as interpreted in *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), precluded the district court from considering a former spouse's military disability benefits and corresponding waiver of retirement pension benefits in determining whether there had been a material change in circumstances justifying modification of the decree. We have not ruled directly on this question, but it has been addressed by other state courts.

Particularly instructive is the decision in *Clauson v. Clauson*, 831 P.2d 1257 (Alaska 1992), which both parties cite in their briefs. In that case, the veteran was awarded disability benefits 4 years after the decree of dissolution. The statutory waiver of a corresponding portion of his retirement pension resulted in the elimination of a monthly payment in the amount of $168 which the veteran's former spouse had been awarded as her share of the retirement pension. The former spouse filed an application seeking modification of the decree based upon a material change in circumstances, and the trial court granted the appli-

cation and required the veteran to pay his former spouse $168 per month retroactive to the date of the veteran's waiver. On appeal, the Supreme Court of Alaska observed:

> [E]quities clearly reside with [the former wife]. In reality, she is not even seeking to modify the divorce decree. [The former husband] did that, unilaterally and extrajudicially, when he decided to waive his retirement pension in order to collect disability benefits. [The former wife] is merely trying to reestablish the status quo through her motion [to modify the parties' divorce decree].

*Id.* at 1261.

After concluding that *Mansell* unequivocally prevented state courts from awarding a veteran's disability benefits received in place of waived retirement benefits to a former spouse, the *Clauson* court focused upon the issue of "whether federal law also precludes [state] courts from considering the economic impact that a waiver of military retirement pay and corresponding receipt of disability pay has on the parties to a divorce." 831 P.2d at 1262. Noting that such benefits would be relevant to the equitable division of marital property under Alaska law in the absence of federal preemption, the court examined cases articulating the scope of federal preemption of state domestic relations law and concluded that neither the USFSPA nor Supreme Court decisions, including *Mansell*, preempted state courts "from considering, when equitably allocating property upon divorce, the economic consequences of a decision to waive military retirement pay in order to receive disability pay." 831 P.2d at 1264. See, also, *In re Marriage of Weberg v. Weberg*, 158 Wis. 2d 540, 463 N.W.2d 382 (Wis. App. 1990).

Although the *Clauson* court found that the wife's loss of her interest in military retirement benefits was "not insignificant and likely justifies a redistribution of the parties' marital property," 831 P.2d at 1261, it imposed a significant limitation on that redistribution, stating:

> We are aware of the risk that our holding today might lead trial courts to simply shift an amount of property equivalent to the waived retirement pay from the military spouse's side of the ledger to the other spouse's side. This is unacceptable. In arriving at an equitable distribution of

marital assets, courts should only consider a party's military disability benefits as they affect the financial circumstances of both parties. Disability benefits should not, either in form or substance, be treated as marital property subject to division upon the dissolution of marriage.

. . . The [lower] court was clearly trying to regain the status quo as if the *Mansell* decision did not exist. The effect of the order was to divide retirement benefits that have been waived to receive disability benefits in direct contravention of the holding in *Mansell*. This simply cannot be done under the Supremacy Clause of the federal constitution.

831 P.2d at 1264. The court therefore vacated the lower court's order and remanded for further proceedings consistent with its opinion.

In *Torwich v. Torwich*, 282 N.J. Super. 524, 660 A.2d 1214 (1995), the former wife of a military retiree sought modification of the decree of dissolution when her fixed percentage share of the retirement pension decreased in value from $249 per month to $97 per month as a result of his waiver of retirement benefits in order to receive disability benefits. The court determined that this "had a substantial adverse impact on [the former wife's] equitable distribution." *Id.* at 529, 660 A.2d at 1216. The court specifically held that while *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), prohibits distribution of retirement pay waived by the veteran in order to receive disability benefits, that "does not mean that other adjustments to the judgment cannot be made when such disability payments commence and reduce one spouse's receipts from his or her share of the other spouse's pension or retirement benefits." 282 N.J. Super. at 529, 660 A.2d at 1216. Thus, the court ordered the dissolution judgment to be reconsidered "to perfect an equitable distribution." *Id.*

In *Vitko v. Vitko*, 524 N.W.2d 102 (N.D. 1994), a former husband challenged a lower court judgment distributing the marital estate, contending that he acquired much of his property with his military disability payments and that, therefore, the property should not be included in the marital estate subject to distribution. The trial court had expressly excluded the former hus-

band's disability benefits from the equitable property distribution. However, citing *Clauson v. Clauson*, 831 P.2d 1257 (Alaska 1992), the trial court considered the former husband's disability income " 'so as to determine the financial circumstances of each party to the divorce.' " 524 N.W.2d at 104. On appeal, the North Dakota Supreme Court determined that " 'when making property distributions or awarding alimony the trial court may consider military disability retirement pay as future income . . . relevant to a determination of the parties' ultimate economic circumstances.' " *Id.* at 103 (quoting *In re Marriage of Kraft*, 119 Wash. 2d 438, 832 P.2d 871 (1992)). Moreover, in discussing *Mansell*, the court concluded that "we need not give a broader preemptive effect to the *Mansell* holding than the *Mansell* court itself recognized in the 'precise and limited' language of a particular federal statute." *Id.* at 103-04. In the end, the North Dakota Supreme Court held that the trial court's distribution of the parties' marital property was not clearly erroneous.

The rationale that benefits exempt from distribution under federal law may nevertheless be taken into consideration in assessing the relative financial condition of the parties in a dissolution action was applied by this court in *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982), decided prior to enactment of the USFSPA. We held in that case that although military retirement pensions could not be included in the marital estate under the Supreme Court's decision in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), the district court could nevertheless consider the fact that the retiree would have the pension as a source of income for his own maintenance and support in determining whether he should pay alimony to his former spouse and if so, the amount of such alimony. Similarly, in *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985), we observed that increases in a military retiree's pension and disability benefits could be considered by the district court in determining whether he was entitled to modification of an alimony award because of his loss of employment.

The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances make it appropriate. *Reichert v.*

*Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). In this case, the relative economic circumstances of the husband and the wife have been altered significantly by the award of service-connected disability benefits to the husband. The wife's economic circumstances have deteriorated through no fault of her own, since the monthly amount which she receives from the retirement pension has been significantly decreased, and she now has the added economic burden of satisfying the judgment in the husband's favor, which we affirm today. The husband's economic circumstances have improved, since his income has remained stable and a portion of it is now exempt from taxation.

We hold that while a Nebraska court may not include service-connected disability benefits awarded to a military retiree as a part of a marital estate under *Mansell v. Mansell*, 490 U.S. 581, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989), it may consider such benefits and the corresponding waiver of retirement pension benefits required by federal law in determining whether there has been a material change in circumstances which would justify modification of an alimony award to a former spouse who was previously awarded a fixed percentage of the retirement pension benefits. We, therefore, conclude that the district court erred in sustaining the husband's demurrer and dismissing the wife's amended application to modify decree.

We further conclude that there has been a substantial and material change in the relative economic circumstances of the parties which would justify an increase in the amount of alimony which the husband is obligated to pay the wife in the absence of evidence that her income from other sources has increased. However, we are unable to resolve the matter on appeal because the record before us does not contain evidence disclosing the current and projected future amounts of the husband's retirement pension and service-connected disability benefits, or other information which may be relevant to the current economic circumstances of the parties. We, therefore, remand case No. S-96-629 to the district court for further proceedings consistent with this opinion. On remand, we instruct the district court to consider the husband's military disability benefits only to the extent receipt of the benefits affect the relative financial circumstances of the parties. We note, as did the court in

*Clauson v. Clauson*, 831 P.2d 1257 (Alaska 1992), that our holding does not permit the district court to treat service-connected disability benefits as divisible marital property in form or substance.

JUDGMENT IN NO. S-95-728 AFFIRMED AS MODIFIED.
JUDGMENT IN NO. S-96-629 REVERSED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.