# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

———

No. 00-6108NE

———

| | |
|---|---|
| In re: | * |
| | * |
| Patti A. Jeter, | * |
| | * |
| Debtor. | * |
| | * |
| | * |
| Philip M. Kelly, Chapter 7 Trustee, | *  Appeal from the United |
| | *  States Bankruptcy Court |
| Appellant, | *  for the District of Nebraska |
| | * |
| v. | * |
| | * |
| Patti A. Jeter, | * |
| | * |
| Appellee. | * |
| | * |

———

Submitted: January 16, 2001
Filed: February 1, 2001

———

Before KOGER, Chief Judge, HILL, and DREHER, Bankruptcy Judges.

———

DREHER, Bankruptcy Judge.

Trustee Philip M. Kelly ("Trustee") appeals from the bankruptcy court's[1] determination that post-petition alimony payments are not property of the estate of Debtor Patti A. Jeter ("Debtor" or "Patti") under § 541(a)(5)(B). For the reasons set forth below, we affirm the decision of the bankruptcy court.

FACTS and PROCEDURAL HISTORY

On February 9, 1995, a Decree of Divorce ("divorce decree") was entered in Nebraska state district court, granting Joseph Jeter and Patti Jeter a divorce. Under the terms of the divorce decree, Joseph was ordered to pay Patti alimony in the amount of $450 per month. A Stipulation and Agreement which was signed by both parties and incorporated into the divorce decree indicated that the alimony payments were scheduled to begin on February 1, 1995, and terminate either after sixty-six successive payments or upon Patti's remarriage or the death of the obligor or recipient. The alimony was labeled "periodic alimony" and was to be included in Patti's gross income and deducted from Joseph's gross income. The Stipulation and Agreement also explicitly stated that the award of periodic alimony "shall be non-modifiable either in amount or term."

The divorce decree provided that Joseph would also pay $835 per month in child support for the couple's two children, Jessica and Nathan. In addition, the parties entered into a Parenting Agreement detailing the custody and care of their two children. Finally, as part of the Stipulation and Agreement incorporated into the divorce decree, the parties agreed to divide their personal property, to sell their real estate, including the family's home, and separately maintain certain insurance policies and retirement benefits.

On December 3, 1999, Patti filed a Chapter 7 bankruptcy petition. She listed the $450 per month alimony payments she received from her ex-husband in her schedules. About six months after the petition

[1]The Honorable Timothy J. Mahoney, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

filing, on June 15, 2000, the Trustee filed a Motion for Turnover seeking to include as property of the estate those alimony payments Debtor had received during the 180-day period after the petition filing.

The bankruptcy judge denied the Trustee's motion, reasoning that post-petition alimony payments should not be included as property of a debtor's estate under § 541(a)(5)(B). Specifically, the bankruptcy court pointed out that the plain language of this provision reaches only property or interests in property obtained from property settlement agreements. Moreover, citing several Nebraska cases, the bankruptcy court suggested that assets received from a property settlement are distinct and separate from spousal support payments in the form of alimony, noting that alimony may be awarded in addition to a property settlement under Nebraska law. As such, the monthly payments Joseph was required to make to Patti in this case were, the bankruptcy court reasoned, clearly alimony and, therefore, not property of the estate under § 541(a)(5)(B).

Subsequently, the Trustee asked the bankruptcy court to alter or amend its order or, alternatively, grant a new trial. The bankruptcy court denied the Trustee's motion in an order dated September 27, 2000. The Trustee timely filed a notice of appeal.

ISSUE

The issue in this case is whether alimony payments a debtor receives during the 180-day post-petition period are property of the bankruptcy estate under § 541(a)(5)(B).

STANDARD OF REVIEW

The appellate court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. See Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999); Bachman v. Laughlin (In re McKeeman), 236 B.R. 667, 670 (B.A.P. 8th Cir.

1999). This case involves review of the bankruptcy court's conclusions of law, specifically, what constitutes property of the estate within the meaning of § 541(a)(5)(B). Since state law governs the nature and extent of a debtor's interest in property, we also review *de novo* the bankruptcy court's determinations of Nebraska law in this case. See O'Neal v. Southwest Missouri Bank of Carthage (In re Broadview Lumber Co., Inc.), 118 F.3d 1246, 1250 (8th Cir. 1997) (citing Nangle v. Laurer (In re Laurer), 98 F.3d 378, 382 (8th Cir. 1996) (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)); see also Simmonds v. Larison (In re Simmonds), 240 B.R. 897, 898 (B.A.P. 8th Cir. 1999) ("We review the bankruptcy court's conclusions of law and determination of state law de novo.").

## DISCUSSION

The Trustee argues that the alimony payments Debtor received during the 180-day post-petition period are property of the estate under § 541(a)(5)(B). Specifically, the Trustee asserts that the alimony payments are, in essence, a property interest because they can be garnished or enforced just like any other property interest. In addition, the Trustee maintains that the broad wording of § 541 certainly reaches this alimony award, even if it is an equitable or speculative interest.

In response, essentially parroting the language of the bankruptcy court's order, Debtor asserts that the plain language of § 541(a)(5)(B) covers only property settlements, not alimony awards. Debtor further suggests that under Nebraska law, alimony payments and property settlement awards are separate and distinct and designed to serve very different purposes. The payments she received in this case were clearly alimony–spousal support intended to allow her to get back on her feet after the divorce, to continue to work, and to care for her children. The bankruptcy court agreed, holding that the alimony payments Debtor received were not property from a property settlement agreement within the meaning of § 541(a)(5)(B). For the reasons set forth below, we affirm the bankruptcy court's decision.

4

The commencement of a bankruptcy case creates an estate which includes:

[a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date ... as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree[.]

11 U.S.C. § 541(a)(5)(B) (1994).

In interpreting this provision, we adhere to the plain meaning rule of statutory construction. See, e.g., Negonsott v. Samuels, 507 U.S. 99, 104 (1993); United States v. Ron Pair Enter., Inc., 489 U.S. 235, 243 (1989); Jasa v. Millard Public Sch. Dist. No. 17, 206 F.3d 813, 815 (8th Cir. 2000). This provision unambiguously provides that a debtor's bankruptcy estate only includes property or any interest in property a debtor receives from a property settlement agreement or a final divorce decree within a certain time frame. Specifically, this provision reaches only property or property interests in which the debtor has an interest on the petition filing date or to which the debtor becomes entitled in the 180-day period thereafter. Case law has interpreted § 541(a)(5)(B) as such. See, e.g., Cordova v. Mayer (In re Cordova), 73 F.3d 38, 39 (4th Cir. 1996) (finding that debtor's solely owned fee simple interest in her home became part of the debtor's bankruptcy estate upon entry of the final divorce decree shortly after the petition filing date); In re McCulley, 150 B.R. 358, 361 (Bankr. M.D. Pa. 1993) (finding that entry date of equitable distribution of property order which gave debtor one-half interest in real estate fell outside the 180-day window).

On its face and by its plain language, § 541(a)(5)(B) does not reach alimony awards. In this case, the parties agree that the monthly payments Debtor received are "alimony."[2] More particularly, in terms

---

[2]Even if the parties disagreed about the label, we would likely find such payments to be alimony for several reasons. First, we give some deference to, though we are not bound by, the state court's label in the divorce decree, and more particularly in this case, the parties' own label in the Stipulation and Agreement. See Sorah v. Sorah (In re Sorah), 163 F.3d 397, 401 (6th Cir. 1998) (stating that "a state court's award of alimony is entitled to deference when labeled and structured as such" and that "bankruptcy courts should not second-guess state court alimony determinations"). Second, the

of the specific language of § 541(a)(5)(B), these alimony payments were not property or an interest in property that came to the Debtor as part of a property settlement agreement or final divorce decree.[3]

Our conclusion that alimony is not property that comes to the debtor as part of property settlement agreement or final divorce decree under § 541(a)(5)(B) finds further support in the Nebraska statutes and accompanying case law which make clear that alimony awards and property settlements serve very different functions. Section 42-365 of the Nebraska Statutes governs alimony awards and the division of property:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. ...

---

payments in this case, for the most part, look like alimony–monthly payments over a five-year period which terminate on the remarriage of the recipient or the death of either party. See Kortus v. Weihs (In re Weihs), No. 99-2535, 2001 WL 21241, at *2 (8th Cir. Jan. 10, 2001) (unpublished per curiam decision) (discussing factors courts consider in awarding alimony under Nebraska law and finding obligation labeled as alimony which was modifiable and limited to five years was indeed support). Perhaps the only unusual feature of these alimony payments is that they cannot be modified in amount or term. However, that feature alone does not transform them into a property settlement award under the rubric of § 541(a)(5)(B). Cf. Kortus, 2001 WL 21241, at *2 (noting that obligation which did not terminate upon remarriage of recipient spouse was still alimony because the obligation had other alimony-like features).

[3]The parties do not dispute that the alimony payments arose from the final divorce decree entered in Nebraska state district court on February 9, 1995. In the facts section of his appellate brief, the Trustee indicates that the alimony award arose out of a property settlement agreement that was approved by the state district court judge. Yet, in the argument section later in his brief, the Trustee explicitly concedes (and further indicates that all parties agree) the alimony Debtor received arises from a final divorce decree entered by a Nebraska state district court judge. The confusion on this issue may stem from the fact that the parties entered into a separate Stipulation and Agreement which was incorporated into the divorce decree. Paragraph 7 of the divorce decree explicitly provides, however, that Joseph Jeter is required to pay Patti Jeter $450 per month in alimony.

6

While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. The purpose of a property division is to distribute the marital assets equitably between the parties. The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

Neb. Rev. Stat. § 42-365 (2000). This statutory provision indicates that alimony and division of property are wholly different: property division is the equitable distribution of marital assets, while alimony represents spousal support and maintenance. See Neb. Rev. Stat. § 42-365; see also Murrell v. Murrell, 440 N.W.2d 237, 241 (Neb. 1989) ("Alimony is an allowance for support and maintenance and is a substitute for marital support. ... It may be used to assist the other party during a reasonable time to bridge that period of unavailability for employment or during that period to get proper training for employment." (internal quotes and citations omitted)). Moreover, another Nebraska statutory provision explicitly allows a court to award both alimony and a property settlement, further suggesting that alimony and distribution of property are, in fact, separate and distinct. See Neb. Rev. Stat. § 42-366(6) (2000) ("Alimony may be ordered in addition to a property settlement award.").

The Nebraska case law interpreting and applying these statutory provisions reinforces this general notion. See, e.g., Taylor v. Taylor, 348 N.W.2d 887, 890 (Neb. 1984) ("This court has held on numerous occasions that alimony and distribution of property rights have different purposes in marriage dissolution proceedings, but in a proper case they may be considered together in reaching an award that is just and equitable."); McBride v. McBride, 319 N.W.2d 72, 74 (Neb. 1982) (reiterating that "alimony and allocation of property rights are distinguishable"). Thus, when the parties and district court used the term "alimony" in the divorce decree and Stipulation and Agreement in this case, they did so with the understanding that alimony and property division are distinct concepts under Nebraska law. Indeed, the Stipulation and Agreement includes specific alimony provisions which are wholly separate from those provisions detailing the distribution of marital assets, evidencing that the parties labeled as "alimony" payments intended to provide spousal maintenance.

7

In addition, as a policy matter, post-petition alimony payments should be excluded from the debtor's bankruptcy estate. An alimony award is most often rehabilitative and temporary in nature and designed to help a spouse bounce back financially from a divorce. Making such support payments property of the estate upon the petition filing would jeopardize the debtor spouse's fresh start and substantially interfere with, perhaps even undermine, the debtor spouse's ability to support himself or herself in the future.

Given the plain statutory language of the Bankruptcy Code provision, the Nebraska statutes and case law, and the policy notion that alimony awards and property settlements serve very different functions, we find that the bankruptcy court correctly concluded that the post-petition alimony payments Debtor received were not property of the estate under § 541(a)(5)(B).

We acknowledge that the bankruptcy court's decision in In re Anders, 151 B.R. 543 (Bankr. D. Nev. 1993), is contrary to the decision we reach here. Anders is, however, neither controlling nor persuasive and is, in our opinion, wrongly decided based on the plain language of § 541(a)(5)(B).[4] Moreover, the court's decision in Anders seems to hinge primarily on certain language in the Nevada statute which allows for periodic or lump-sum alimony payments, making it difficult for a court to decipher whether an award is in the form of alimony or a property settlement. Unlike the Nevada statute, the Nebraska statutes we consider here clearly differentiate between alimony and property awards and the function of each type of award.

---

[4]The Trustee points out that another Nebraska bankruptcy court, relying on the Anders decision, concluded in In re Michaelson, No. 98-40252, that post-petition alimony payments are property of a debtor's bankruptcy estate. That bankruptcy court did not, however, consider the specific provisions of the Nebraska statute and explicitly indicated that the result compelled by Anders was egregious. To the extent Michaelson is at odds with the decision we reach here, we find it was wrongly decided.

ACCORDINGLY, we affirm the decision of the bankruptcy court that post-petition alimony payments are not property of the debtor's estate under § 541(a)(5)(B).

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT

9