VENETTE S. CREAGER, APPELLEE, V. ROBERT E. CREAGER, APPELLANT.

366 N.W.2d 414

Filed April 26, 1985. No. 83-967.

William A. Wieland of Healey, Brown, Wieland, Kluender, Atwood & Jacobs, for appellant.

Con M. Keating of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

This is an appeal in a modification of alimony proceeding. The dissolution decree of August 17, 1979, divided the property, directed the parties to sell their residence, and ordered Robert E. Creager, respondent-appellant, to pay as alimony to Venette S. Creager, petitioner-appellee, $500 per month for 36 months, and, thereafter, $300 per month for 60 months. The trial court credited Robert's alimony arrears with $4,350.54 and denied his application to modify the alimony payments. Robert appeals. We affirm.

On January 10, 1980, Robert filed a motion for credit, as alimony, for the payments that he was making on the residence not sold as decreed.

On August 29, 1980, he filed a petition to modify the alimony award, alleging a change of circumstances in the employment and earnings of the parties and a change in his health that would require surgery; the prayer was for a suspension or modification of alimony. Pluries summons was served on Venette on July 31, 1981.

No amendments were made to these pleadings, and Venette filed no responses. Trial was had on September 1, 1983; the trial delay is not explained. Without objection, the evidence related to both alimony credits and modification from the decree up to the trial.

"Unless amounts have accrued prior to the date of service of process on a petition to modify, orders for alimony may be modified or revoked for good cause shown . . . ." Neb. Rev.

Stat. § 42-365 (Reissue 1984). Good cause means a material and substantial change in circumstances and depends upon the circumstances of the individual case. *Roth v. Roth*, 218 Neb. 417, 355 N.W.2d 516 (1984).

At dissolution Robert was a retired Air Force officer, 58 years old, receiving $10,000 per year in military retirement benefits, projected to increase about 6 percent a year. From 1977 to April 1980 he was employed as a chief pilot in private industry, earning $17,000 to $25,000 per year. During the last 2 years, he was paid irregularly, and he quit, describing his employer as a "shabby organization." In September 1980 he had corrective open heart surgery; recovery was complete in November 1981. His pilot's license was canceled because of this health problem. In November 1980 he moved into the parties' residence in Lincoln, Nebraska, occupying it until August 1983, when it was sold; during this occupancy, other family members sometimes stayed there. Since the surgery, Robert's income is a $173 monthly VA disability pension and his military retirement pension, which has increased from $14,000 to about $16,400 in 1982. He has investments and other assets valued at $59,000.

Since the dissolution, Venette has increased her income from $8,900 as a part-time real estate agent in Lincoln to $17,500 as a secretary and part-time real estate agent in Washington, D.C. She has assets valued at $10,600 and a small condominium having a net value of $22,000.

Robert had paid $6,500 in alimony through November 1980, when he voluntarily stopped making payments. With his modification petition he paid $15,100 of the $15,400 owed in back alimony to the clerk to cover the arrears and to comply with § 42-365.

Robert claims that since his surgery he has been unable to find work, although he circulated "hundreds" of inquiries within the aviation industry. He contends that he can perform only aviation-related jobs and that because of his age, health, and limited skills he is not otherwise employable. His search for nonaviation-type employment was limited. The trial judge found him employable.

Robert assigns five errors that are consolidated as follows: (1) The failure of the court to find a material change in

circumstances; and (2) Failure to credit his alimony arrears with an amount equal to one-half of the house payments that he paid.

In a proceeding to modify an alimony award, § 42-365, that matter is initially entrusted to the sound discretion of the trial judge, which matter, on appeal, will be reviewed de novo on the record and affirmed in the absence of an abuse of the trial judge's discretion. However, where the evidence is in conflict, this court will give weight to the fact that the trial judge observed and heard the witnesses and accepted one version of the facts rather than another. *Cooper v. Cooper, ante* p. 64, 361 N.W.2d 202 (1985).

Concerning the first error, Robert is interested only in aviation-related employment, disregarding other possibilities and relying on his health, age, and lack of nonaviation work experience. In *Sifers v. Sifers*, 544 S.W.2d 269 (Mo. App. 1976), the Missouri Court of Appeals was faced with similar facts. The court refused to reduce the ex-husband's alimony obligation in spite of his undergoing surgery for removal of a malignant kidney and subsequently losing his job. The court found that simply because the ex-husband could not find a job in his area of expertise as a chocolatier did not mean he was physically unable to work. He was employable.

Further, Robert's pension income, together with disability benefits, has increased each year, which is a circumstance that may be considered. *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984). See, also, *Dorey v. Dorey*, 412 So. 2d 808 (Ala. Civ. App. 1982).

The record shows that after Robert suspended making alimony payments in November 1980, he gave his adult daughter $2,500 and his adult son approximately $500.

Venette's increase in income is a circumstance to be considered; however, the evidence shows that her living expenses in Washington, D.C., also increased proportionately, requiring her to work at two jobs. Further, there is evidence in the record that her change to full-time employment and increase in income was within the reasonable contemplation of the parties at the time of the dissolution. *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983).

Considering all of the circumstances present, including the alimony credits next discussed, the trial judge did not abuse his discretion in denying Robert's application to either reduce or suspend the ordered alimony award.

The court gave Robert credit on the alimony judgment as follows: $1,920 for mortgage principal payments; $478.90 for insurance premiums paid on the house; one-half of two income tax refunds received by Venette, totaling $1,546.64; and $405 for 3 months that Venette occupied the house. Out of the $15,100 held by the clerk, the court ordered $4,050.54 credited to Robert and $11,049.46 paid to Venette. Robert argues that instead of the $1,920, he should receive credit for $5,008, that being one-half of the total mortgage payments paid.

Both parties treat Robert's claim for credits as a modification of an alimony order, § 42-365, although some alimony payments had accrued when process was served and the court found no good cause was shown. Without deciding that issue we assume the court's authority to grant credits and to distribute alimony funds is found in Neb. Rev. Stat. § 42-369(4) (Reissue 1984), "the clerk shall disburse all payments received as directed by the court," and the court's inherent power to continue its jurisdiction over alimony judgments to avoid inequitable results. See, *Ziegenbein v. Ziegenbein*, 138 Neb. 320, 292 N.W. 921 (1940); *Wolter v. Wolter*, 183 Neb. 160, 158 N.W.2d 616 (1968).

Contrary to the dissolution decree, the parties privately agreed to withhold the residence from the market, with Robert occupying it most of the time and refusing to rent it. Although he paid all of the regular house maintenance costs including mortgage principal and interest, this arrangement was an advantage to him, providing his own living quarters. The $1,920 credit allowance under the circumstances was equitable and reasonable, falling far short of an abuse of discretion, particularly in view of the other credits allowed and the extended period of time that he was in default of alimony payments.

AFFIRMED.