LORRAINE M. PORTLAND, APPELLEE,
V. BRYAN PORTLAND, APPELLANT.
558 N.W.2d 605

Filed January 28, 1997.   No. A-95-788.

Michael P. Dowd, of Dowd & Dowd, for appellant.

Gary B. Randall, P.C., and Mary Rauth Winner, P.C., of Marks Clare & Richards, for appellee.

HANNON and MUES, Judges, and NORTON, District Judge, Retired.

NORTON, District Judge, Retired.

Bryan Portland appeals from an order of the district court denying Bryan's application for modification of his divorce decree and granting the motion by Bryan's ex-wife, Lorraine M. Portland, for substitution of collateral. In his application for modification, Bryan requested that the court reduce the alimony Bryan is currently paying to Lorraine. During the pendency of Bryan's application for modification, Lorraine filed a motion for substitution of collateral. The court heard Lorraine's motion to substitute collateral and Bryan's application for modification at the same time; the court denied Bryan's application for modification, while granting Lorraine's motion for substitution of collateral. For reasons set forth fully below, we affirm the district court's decision denying Bryan's request for modification of alimony, but reverse the court's decision granting Lorraine's motion for substitution of collateral.

## STATEMENT OF FACTS

Lorraine M. and Bryan Portland were divorced by decree on March 29, 1993. During their marriage, Lorraine and Bryan had three children. When the original decree was entered, one child, Melissa, born August 1, 1977, remained a minor, and by stipulation, Bryan received custody of Melissa. In the original decree, Lorraine was ordered to pay child support to Bryan of $150 per month and Bryan was ordered to pay Lorraine alimony for a period of 120 months as follows: $1,000 per month for the first 3 months, $750 per month for the next 57 months, and $500 per month for the remaining 60 months. The court ordered that the alimony payments cease upon the death of either party or the remarriage of Lorraine.

In determining the amount of alimony, the court considered the net income of both parties. The court considered evidence

Bryan presented regarding the economic downturn affecting Bryan's company, a downturn likely to adversely affect Bryan's income. Taking the economic downturn into account, the court found that Bryan would reasonably be able to make $5,000 per month beginning May 1, 1993. .

In the decree, the court split Lorraine and Bryan's marital assets. One of the assets the court divided was Bryan's performance unit share plan at Information Products, Inc. (IP). The share plan is essentially a deferred compensation plan, which was valued at $86,000 at the time of the decree. The decree awarded 65 percent of the share plan to Bryan and 35 percent to Lorraine. Lorraine's 35-percent share was worth approximately $30,000 when the district court entered the decree.

In August 1993, Melissa began living with Lorraine, and Lorraine filed an application to modify the divorce decree on September 15, 1993. Upon hearing the application, the court granted Lorraine custody of Melissa, terminated Lorraine's child support obligation effective August 1, 1993, and ordered Bryan to pay Lorraine child support in the amount of $500 per month beginning October 1, 1993. The court allowed Bryan to pay his October and November payments in $250 increments beginning in January 1994. Bryan paid Lorraine child support and alimony for the month of December 1993 at the time of the decree's modification.

On October 31, 1994, Bryan filed an application to modify the decree, alleging that a substantial change in circumstances had occurred and that he was now unable to meet his child support and alimony obligations. Bryan requested a temporary reduction of alimony.

On March 17, 1995, Lorraine filed a motion for substitution of collateral and notice of hearing, alleging that Bryan had put at risk her 35-percent share of Bryan's share plan awarded to her in the decree. IP is withholding the money in Bryan's share plan because Bryan left IP and joined a competitor, Network Concepts Inc. (NC), in direct violation of Bryan's employment agreement with IP.

On May 23, 1995, the district court for Douglas County heard both Bryan's application to modify the decree and

Lorraine's motion for substitution of collateral. The court found that Bryan failed to show good cause for a modification and denied Bryan a reduction in alimony. Further, the court granted Lorraine's motion for substitution of collateral because Bryan had placed at risk Lorraine's 35-percent share of his share plan. The court ordered Bryan to substitute collateral in the amount of $30,000 on or before August 1, 1995.

## ASSIGNMENTS OF ERROR

Bryan argues that the district court erred in (1) finding that Bryan failed to show good cause for modification of the decree, specifically, that Bryan failed to show a material change in his income and his ability to earn a similar income within the current year, and (2) sustaining Lorraine's motion for substitution of collateral, which punishes Bryan for switching employment in good faith, a change which he felt was necessary to preserve his vocational and economic well-being.

## STANDARD OF REVIEW

The modification of an alimony award is entrusted to the discretion of the trial court and will be reviewed de novo on the record for abuse of discretion. *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994); *Rood v. Rood*, 4 Neb. App. 455, 545 N.W.2d 138 (1996). Abuse of judicial discretion exists when the reasons or rulings of a trial judge are clearly untenable such as to unfairly deprive a litigant of a substantial right and a just result. *Ainslie v. Ainslie*, 249 Neb. 656, 545 N.W.2d 90 (1996); *Mathis v. Mathis*, 4 Neb. App. 307, 542 N.W.2d 711 (1996).

## ANALYSIS

After reviewing the evidence, we conclude that regardless of whether the decrease in Bryan's income was a material and substantial change, Bryan's current decrease in income was clearly within the contemplation of the parties at the time of the original decree. Neither the decrease in Bryan's income nor the increase in Lorraine's income justifies a decrease in alimony. Additionally, we find that the district court improperly ordered Bryan to substitute collateral in the amount of $30,000.

*Material and Substantial Change.*

■ One may in good faith make an occupational change even though the change may reduce one's ability to meet financial obligations. *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Bryan cites this proposition and argues that his decision to leave IP and take a job at NC was in good faith and that thus, the district court should have reduced the alimony he pays to Lorraine, because he is no longer financially able to meet his obligations. We disagree.

■ We do not dispute Bryan's contention that he made the move to NC in good faith, but, rather, we point out that an award of alimony may be modified or revoked only for good cause shown. Good cause means a material and substantial change of circumstances and depends upon the facts of each case. Neb. Rev. Stat. § 42-365 (Reissue 1993); *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985). Any change in circumstances within the contemplation of the parties at the time of the decree does not justify a change or modification of the original order. *Schmitt v. Schmitt*, 239 Neb. 632, 477 N.W.2d 563 (1991); *Cooper v. Cooper*, 219 Neb. 64, 361 N.W.2d 202 (1985).

Bryan argues that he is not making the $5,000 per month the court reasonably assumed and that the decrease in his income constitutes a material and substantial change justifying a decrease in alimony. The record shows that Bryan's income was as follows: In 1992, Bryan made $89,492; in 1993, $111,934.36; and in 1994, Bryan's total income was $56,858.82—$19,976.82 from IP and $36,882 from NC. Thus, for 1994, the year in which Bryan filed to modify the decree, Bryan grossed approximately $4,700 per month. We do not consider this a material and substantial change.

Determining whether the decrease in Bryan's 1995 income was a material and substantial change is more difficult. For the first 3½ months of 1995, Bryan testified that he made approximately $14,500. For the next few months, Bryan testified that he would receive a gross salary of approximately $3,000 per month. Thomas Smith, chief operating officer of NC, testified by a telephonic deposition that after August 1995, Bryan would no longer receive $3,000 per month, but, rather, Bryan's only

income from NC would come entirely from commissions. Smith testified that Bryan would not realize any income until Bryan paid NC back the $27,531.91 he owes them. Bryan owes NC this money because Bryan's commissions failed to exceed the salary NC previously paid him. Smith also testified that Bryan could make from $2,500 to $17,000 in commissions on a single sale. Bryan testified that he was looking for another job to supplement his income.

Bryan argues that because his income is now at least 10 percent lower than the $5,000 per month anticipated by the district court, there is a rebuttable presumption of a material change in circumstances. The case Bryan cites, *Lebrato v. Lebrato*, 3 Neb. App. 505, 529 N.W.2d 90 (1995), is a child support case, and the 10-percent guideline Bryan advocates has been incorporated into the child support guidelines. The 10-percent guideline is not applicable in alimony cases, and we decline to extend the 10-percent rule to the instant case.

Regardless of whether the decrease in Bryan's 1995 income was a material and substantial change, a downturn in Bryan's industry and a resulting decrease in Bryan's income were clearly within the contemplation of the parties at the time of the original decree. In its order, the trial court stated that

> the evidence further shows that within his industry there is a downward trend in sales which will affect Respondent's income adversely. The Respondent has enjoyed a base salary of $55,000.00 per year which will be eliminated in April of 1993. The Respondent testified that it is his belief that he will only be able to generate a salary of $35,000.00 to $40,000.00 per year thereafter. While it appears to the Court that Respondent's salary will be reduced, it is also clear from Respondent's past history that he has always been sufficiently enterprising to provide himself and his family with a substantially higher standard of living.

Thus, based merely on Bryan's reduced income, we find that the trial court did not abuse its discretion in failing to reduce Bryan's alimony payments.

*Increase in Lorraine's Income.*

Alternatively, Bryan argues that his alimony payments should be temporarily reduced because Lorraine's income has

increased since the original decree. An increase in a party's income is a circumstance that may be considered in determining whether an alimony award should be modified. *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992).

Based on the record, we find that although Lorraine's income has increased, her expenses have increased as well. Even with her rising income, she is unable to meet the expenses she and her daughter incur.

Lorraine's salary history is as follows. In 1992, Lorraine made $14,577; in 1993, her income rose to $21,100; and in 1994, to $26,555. In 1995, Lorraine's income through May 31 was $8,815. Lorraine testified that although her income has risen, her expenses have also increased since the original decree. See *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985) (court must take into consideration not only increase or decrease in person's income, but also increase or decrease in person's expenses).

In the instant case, including the alimony and child support Bryan provides, Lorraine's expenses exceed her monthly income. Lorraine should not be penalized for supplementing Bryan's alimony award to meet her expenses. Given that Lorraine is unable to pay her bills with the child support and alimony that Bryan is required to pay, we do not find that the increase in Lorraine's income justifies a reduction in alimony.

*Motion for Substitution of Collateral.*

Bryan also appeals the district court's ruling granting Lorraine's motion to substitute collateral. The district court ordered Bryan to substitute collateral worth $30,000 to replace the 35 percent of Bryan's share plan awarded to Lorraine in the decree. Because Bryan violated the noncompetition provisions of his employment agreement with IP, IP is currently withholding the money in Bryan's share plan.

We find that the district court abused its discretion in granting Lorraine's motion to substitute collateral. Essentially, Lorraine asked the district court to modify the original divorce decree, substituting one asset for another. Under Nebraska law, the district court did not have authority to do so.

Lorraine and Bryan were divorced on March 29, 1993, and Lorraine did not file her motion for substitution of collateral until March 17, 1995. Because Lorraine and Bryan were divorced before September 9, 1995, Neb. Rev. Stat. § 42-372 (Reissue 1993) applies to this case. A court may modify a decree within 6 months of the entry of the decree, or if 6 months have passed since the decree's entry as in this case, a district court may modify or vacate a divorce decree under either Neb. Rev. Stat. § 25-2001 (Reissue 1995) or the court's independent equity jurisdiction. *DeVaux v. DeVaux*, 245 Neb. 611, 514 N.W.2d 640 (1994).

Under § 25-2001, a district court has the power to vacate or modify its own judgment after the 6-month time period for any of the nine reasons set out in the statute. After reviewing the record, we conclude that none of the nine reasons apply in the instant case.

Before concluding that the court abused its discretion in substituting collateral, we must determine whether the district court properly granted Lorraine's motion under its independent equity jurisdiction.

A court's authority to modify or vacate a decree under its independent equity jurisdiction is rarely authorized. See *DeVaux, supra*. In an older case, *Shinn v. Shinn*, 148 Neb. 832, 29 N.W.2d 629 (1947), the Nebraska Supreme Court exercised its independent equity jurisdiction to set aside a divorce decree because the husband perpetrated fraud upon his wife and the court when he promised not to divorce his wife if she moved back in with him. The parties had been living apart for some time, but upon her husband's request, the wife moved back in with her husband. Nevertheless, the husband went ahead with the divorce.

The Supreme Court held that under § 25-2001, the husband had practiced fraud in obtaining the divorce, and thus, the wife was entitled to file a fraud action against her husband within 2 years. The court noted that the wife failed to file such an action within the 2-year time period, but emphasized that it had the authority to set aside the divorce decree under its independent equity jurisdiction. In exercising its independent equity juris-

diction and vacating the divorce decree, the court emphasized the sacred bond between husband and wife and the court's policy of encouraging couples to reconcile within the 6-month waiting period.

We find that the district court did not have a similar reason to invoke its independent equity jurisdiction in the instant case. Lorraine does not argue, and we do not find, any underlying public policies sufficient to allow the district court to invoke its independent equity jurisdiction. At the time of the original decree, the district court generally granted Lorraine a 35-percent interest in Bryan's share plan, regardless of whatever form the 35 percent would end up being. Because Bryan violated his noncompetition agreement with IP, Lorraine's 35-percent interest may no longer be worth what it was at the time the decree was originally entered. Even though this is true, the district court was without authority to modify the divorce decree to remedy this fact under § 25-2001 or by exercise of its independent equity jurisdiction. We do not wish this case to be interpreted as a holding that there are no other means by which Lorraine could seek recourse if Bryan has endangered the portion of his share plan which Lorraine was awarded in the decree.

Accordingly, we affirm the district court's decision denying Bryan's request for modification of alimony, but reverse the court's decision granting Lorraine's motion for substitution of collateral. Bryan is ordered to pay Lorraine $1,500 in attorney fees for this appeal.

AFFIRMED IN PART, AND IN PART REVERSED.