CAROL A. BOWERS, FORMERLY KNOWN AS
CAROL A. SCHERBRING, APPELLANT, V.
ROBERT SCHERBRING, APPELLEE.

611 N.W. 2d 592

Filed June 2, 2000.   No. S-98-564.

Michael B. Kratville, of Terry & Kratville Law Offices, for appellant.

Karen L. Vervaecke for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Carol A. Bowers, formerly known as Carol A. Scherbring, appealed from the Douglas County District Court's denial of her application to modify an award of alimony and her request for attorney fees. The Nebraska Court of Appeals affirmed, and we granted Bowers' petition for further review.

## SCOPE OF REVIEW

■ The determination of good cause necessary for modification of a dissolution decree is a matter of discretion for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997).

## FACTS

On June 3, 1996, the district court entered a decree dissolving the marriage between Bowers and Robert Scherbring. The decree awarded each party alimony of $1 per year. On September 24, Bowers filed an application for an increase in alimony, alleging a material change in circumstances. Bowers alleged that subsequent to entry of the decree, she was unexpectedly laid off from her job as part of a reduction in force which occurred on August 15.

At the hearing on the application, Bowers testified that she had previously been employed for numerous years as a medical technologist. A few days before entry of the decree, she began to work for Independence Regional Hospital and was employed there for 89 days. Subsequently, she was employed at Trinity Hospital for approximately 3 weeks. She voluntarily terminated her employment for an opportunity to work at Kaiser Permanente. She voluntarily terminated her employment with

Kaiser Permanente and then gained employment at Physicians Reference Laboratory, LLC. There, she was asked to leave employment after approximately 1 month because of a mistake she had made in the laboratory. She then became employed at Lab One and worked there for approximately 7 weeks before she was asked to leave. At the time of the hearing, Bowers had not sought employment in the medical technology field since her employment with Lab One ended in March 1997. Bowers testified that she was unable to work in the field of medical technology due to her problems with cognitive impairments.

The medical testimony offered at the hearing showed that Bowers suffered from cognitive impairments related to short-term memory and that she was unable to continue working in the medical technology field. Bowers has suffered problems with memory retention and concentration since 1994. She has been treated by Dr. Johnny Johnson, an internal medicine/general practice physician; Dr. Roxane Bremen, a neurologist; Dr. Dennis Cowan, a neuropsychologist; and a Dr. Keyser, a psychologist.

Dr. Thomas Grandy, a psychologist, opined that in terms of Bowers' short-term memory, she had recall very similar to a person with a learning disability. Her scores on visual matching and "cross out" were in the 28th and 24th percentile respectively. Grandy stated that such deficiencies would cause problems for someone working as a medical technologist and that the tests he performed showed that Bowers had a deficiency in short-term memory such that she had difficulty in remembering words and numbers and in putting items in sequence. Grandy stated that the test results, combined with employer information which he had obtained, strongly suggested that Bowers could not satisfactorily perform the daily duties required of a laboratory medical technologist in a timely and accurate manner. He opined that Bowers could not maintain employment in her previous career, but that she might be employable within the medical field either in a less demanding professional position or in a clerical position. He recommended that Bowers undergo vocational rehabilitation.

Bowers testified that she had collected unemployment for 6 months and then had "cashed in" her retirement funds. She has

applied twice for Social Security disability benefits, but was turned down. She was subsequently accepted into graduate school at the University of Nebraska-Omaha in the Department of Education, where she hopes to become a counselor and work with abused women. She estimated that her monthly living expenses while she attended graduate school would be approximately $1,600 per month.

The district court denied Bowers' application for modification, finding that there had not been a material change in circumstances. Thereafter, the Court of Appeals affirmed. See *Bowers v. Scherbring*, No. A-98-564, 1999 WL 1080659 (Neb. App. June 29, 1999) (not designated for permanent publication). The Court of Appeals relied on the fact that Bowers had suffered from memory problems since 1994 and that she had reported difficulties with thinking and problems with memory in November 1995. It concluded that Bowers did not prove a change in circumstances regarding her employability and earning capacity and that although she offered evidence proving that she was no longer employable as a medical technologist, she failed to present evidence to show that she was unemployable in any field or that her medical condition had caused a decrease in her earning capacity. The court, with one judge dissenting, concluded that Bowers had failed to meet her burden of proving a change in circumstances since the time of the decree, and it affirmed the denial of Bowers' application to modify the decree. We granted further review.

## ASSIGNMENTS OF ERROR

Bowers argues, summarized and restated, that the Court of Appeals erred (1) in failing to find that a material change in circumstances had taken place since the entry of the divorce decree and (2) in not awarding fees and costs to Bowers.

## ANALYSIS

Pursuant to Neb. Rev. Stat. § 42-365 (Reissue 1998), alimony orders may be modified or revoked for good cause shown. In order for Bowers to show good cause, she must show a material and substantial change in circumstances which was not contemplated by the parties at the time of the decree.

The determination of good cause necessary for modification of a dissolution decree is a matter of discretion for the trial court, and its decision will be reviewed on appeal de novo on the record and will be reversed upon an abuse of discretion. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). Good cause means a material and substantial change in circumstances and depends upon the circumstances of each case. *Id.*; *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985). In a de novo review, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue. When the evidence is in conflict, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

We first consider whether Bowers proved a material change in circumstances and examine the decision of the district court for an abuse of discretion. A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id.* Here, the evidence is not in conflict, and our de novo review will be based upon whether the evidence presented establishes a material change in circumstances regarding Bowers' employment subsequent to the date of the decree such that the district court abused its discretion in refusing to modify the award of alimony.

Changes in circumstances within the contemplation of the parties at the time a decree of dissolution is entered do not justify modification of an alimony award. *Id.* The moving party has the burden of demonstrating a material and substantial change in circumstances which would justify the modification of the alimony award. *Id.*

In concluding that Bowers had failed to establish a material change in circumstances, the Court of Appeals relied upon the fact that she had suffered from memory problems since 1994 and that the neurocognitive deficits from which she suffered had existed since that time. See *Bowers v. Scherbring, supra.* Although it is undisputed that Bowers' neurocognitive deficits have existed since 1994 and were therefore contemplated by the

parties at the time of the dissolution, we conclude that it was not contemplated by the parties that Bowers' illness would prevent her from working as a medical technologist. Bowers had been treated by doctors regarding her illness prior to the decree of dissolution, but it was only after the decree that she had to stop working.

As a medical technologist, Bowers earned between $17 and $18 per hour. Assuming a 40-hour workweek, Bowers earned between $35,000 and $37,000 per year. At the time of the hearing on the application, Bowers was no longer employed. Grandy testified that Bowers might be employable within the medical field either in a less demanding position or in a clerical position. He recommended that Bowers undergo rehabilitation. We conclude that Bowers has shown that she has sustained a decrease in her earning capacity.

We next consider whether Bowers was required to show that she was unemployable in any field in order to prove a material change in circumstances occurring since the decree. In *Creager v. Creager*, 219 Neb. 760, 366 N.W.2d 414 (1985), the husband was ordered to pay alimony, and 1 year later, he filed a petition to modify the award. The husband alleged a change of circumstances in the employment and earnings of the parties and a change in his health. The husband had worked as a pilot, but his pilot's license had been canceled because of health problems. He claimed that since his surgery, he had not been able to find work in this field. He alleged that he could perform only aviation-related jobs and that because of his age, health, and limited skills, he was not otherwise employable. The trial court found him to be employable and refused to modify his alimony obligation.

In affirming the trial court's decision, we noted that the husband seemed interested only in aviation-related employment and disregarded other employment possibilities. Relying upon *Sifers v. Sifers*, 544 S.W.2d 269 (Mo. App. 1976), we reasoned that simply because the husband could not find a job in his area of expertise did not mean that he was physically unable to work. His pension income, together with disability benefits, had increased each year. We noted that the wife's increase in income was offset by an increase in her living costs in Washington, D.C.

Based on these facts, we found no material change in circumstances and affirmed the trial court's denial of the husband's request to reduce or suspend the alimony award.

In contrast, in *Sholl v. Sholl*, 216 Neb. 289, 343 N.W.2d 742 (1984), we held that a change in the husband's status from being an owner-operator of a business to being a salaried employee was such a material change in circumstances as to constitute good cause to modify the husband's alimony obligation. In that case, the husband had been contracting to buy a retail grocery store at the time of the divorce. He was ordered to pay $370 per week in alimony for the first year and $350 per week for the following 3 years. When the grocery store began to lose money, the husband was unable to fulfill the terms of the purchase agreement. At the time of the request for modification, the husband was the comanager of another grocery store, where he earned $327 per week after taxes. On these facts, we found that the husband had proved a material change in circumstances. *Sholl* is significant because it illustrates that a change in one's status, such as a change from being an owner-operator of a business to being a salaried employee, if accompanied by a loss in income, can be the basis for modification of an alimony award.

In the present case, Bowers is unable to work in her chosen profession and has gone back to school to learn another occupation. We therefore conclude that the Court of Appeals erred in requiring Bowers to present evidence to show that she was unemployable in any occupation.

In summary, Bowers has shown a material and substantial change in circumstances that supports a modification of alimony. As the dissent in the Court of Appeals stated: "I know of no principle that would require an alimony recipient who has suffered a medical disability to prove a complete lack of employability in order to justify modification of an alimony award." *Bowers v. Scherbring*, No. A-98-564, 1999 WL 1080659 at *4 (Neb. App. June 29, 1999) (Mues, J., dissenting) (not designated for permanent publication). Bowers has shown a decrease in earning capacity not contemplated by the parties at the time of the decree, and the district court abused its discretion in failing to modify Bowers' alimony award.

Bowers also assigns as error that the Court of Appeals failed to rule on her request for fees and costs. This assignment of error is without merit. Bowers did not include an argument addressing this assignment of error in her brief before the Court of Appeals. Thus, the Court of Appeals was correct in not addressing this assignment of error.

## CONCLUSION

For the reasons set forth herein, we reverse the decision of the Court of Appeals and remand the cause to that court with directions that the Court of Appeals remand the cause to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.

STEPHAN, J., dissenting.

I respectfully dissent. Based upon my review of the record, I cannot conclude that the trial court abused its discretion in determining that Bowers failed to meet her burden of proving a material change in her circumstances which would warrant modification of the original alimony award.

Bowers filed the application to modify on September 24, 1996, less than 4 months after entry of the decree on June 3. In her application, Bowers alleged that her circumstances had changed in that she "was unexpectedly laid off from her job as part of a reduction in force on approximately August 15, 1996." She did not allege any inability to work due to deterioration of her health. Although this had become her contention by the time of the modification hearing on April 20, 1998, she testified that she was "asked to leave" her job in August 1996 but did not state that the request was prompted by either a reduction in force or performance deficiencies related to her health.

Bowers testified that subsequent to the decree, her health changed for the worse in that she developed problems with memory and "brain functioning." As the majority notes, Bowers sought medical care for similar problems beginning in 1994. A medical record dated September 27, 1995, indicates that Bowers had reported intermittent problems with memory retention and concentration over a period of 2 years. Another medical record dated April 8, 1997, reflects that Bowers had reported "continual neurocognitive deficits" since 1994.

I disagree with the majority's conclusion that "it was not contemplated by the parties [at the time of the dissolution] that Bowers' illness would prevent her from working as a medical technologist." The record reflects that on May 11, 1994, Bowers resigned her position as a medical technologist at Midlands Community Hospital effective June 4 of that year, stating that she wished to assist her son with his modeling career in New York over the summer months. A Mayo Clinic record dated April 23, 1996, includes a medical history reflecting that Bowers reported becoming ill during a 1994 trip to New York City with her son and that she continued "to feel unwell" over the following year. This record further reflects that Bowers "worked in Missouri as a medical technologist for 2-1/2 months from November 1995, but is not working now." The only other evidence of Bowers' employment during the period between her resignation from her medical technologist position at Midlands Community Hospital in 1994 and her commencement of work in a similar position at Independence Regional Hospital "a few days prior to the divorce" was a job at Younkers which she held for approximately 3 weeks. In the report of his psychological evaluation of Bowers in November 1997, under the heading "Interview Information," Grandy recorded:

> Ms. Bowers stated that she was previous [sic] diagnosed with problems in the areas of short-term memory and thought sequencing by a neuropsychologist. She indicated that these problems were the result of encephalopathy caused by high blood serum levels of iron, lead and copper. She presented a lengthy work history in medical technology, but reported difficulties maintaining full-time employment since 1994. She reportedly left six or seven positions during the past four years due to mistakes and inability to learn.

This evidence contradicts Bowers' testimony that she had no reason to doubt her ability to perform the medical technologist position at Independence Regional Hospital when she accepted it. The trial court was in the best position to assess Bowers' credibility on this point and could have quite reasonably inferred from the evidence that Bowers suffered from health problems which prevented her from holding regular employment as a

medical technologist for approximately 2 years prior to the 1996 dissolution decree and that therefore, Bowers failed to prove a material change in circumstances which would warrant modification of the alimony award.

For these reasons, I agree with the Court of Appeals that the district court did not abuse its discretion in denying the modification sought by Bowers. I would affirm.

HENDRY, C.J., joins in this dissent.