IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

BREIT V. BREIT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DONALD H. BREIT III, APPELLANT,
V.
MARIANNE S. BREIT, APPELLEE.

Filed November 4, 2014.    No. A-13-675.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Donald H. Bowman and Terri M. Weeks, of Bowman & Krieger, for appellant.

W. Patrick Betterman, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

Donald H. Breit III appeals from the order of the district court for Lancaster County, which granted Marianne S. Breit's complaint to vacate the decree dissolving the parties' marriage as to the property settlement only. Donald assigns error both to the court's decision to vacate the property settlement and the award of attorney fees to Marianne. Because we find no abuse of discretion in the court's decisions, we affirm.

## II. BACKGROUND

The parties' original divorce trial occurred on September 15 and 16, 2010. On October 27, the district court entered a decree dissolving the parties' marriage. The court awarded the parties joint legal custody and Marianne physical custody of the parties' three minor children and ordered Donald to pay child support of $3,900 per month for three children. The court approved the parties' property settlement agreement and divided the marital estate accordingly. Under the property settlement agreement, Donald was awarded the parties' interest in The Willows

- 1 -

Corporate, LLC (the Willows), at a value of $50,000 and an entity known as DHB III, LLC (DHB), at a value of $0. The agreement did not list or value any interest in Custom Spine, Inc., stock. The division of property resulted in a net award to Donald of $848,298 and to Marianne of $848,299. The court awarded Marianne alimony of $6,000 per month for 84 months. The court also ordered Donald to pay $5,000 toward Marianne's attorney fees, but it ordered the parties to pay their own litigation expenses.

On April 26, 2011, Marianne filed a complaint, seeking to vacate the decree with respect to the property settlement and to modify the decree with respect to alimony and child support. Marianne alleged that Donald fraudulently misrepresented the value of the parties' interest in the Willows and that he fraudulently concealed and misrepresented his interest in 45 shares of common stock of Custom Spine. Marianne set forth additional allegations in connection with her motion to modify alimony and child support. Marianne stated that she had no adequate remedy at law but also noted that the court had the inherent power under Neb. Rev. Stat. § 25-2001 (Reissue 2008) to vacate or modify its judgments or orders upon a motion filed within 6 months after the entry of the judgment or order. Marianne asked the court to vacate the decree and set aside the property settlement agreement on the ground that it was fraudulently obtained and inequitable as a matter of law. She further asked the court to modify the decree to provide for an equitable division of the marital estate, including an award to Marianne of half the proceeds of the Willows in excess of $50,000 and a one-half interest in DHB, an increase in child support based on Donald's increased monthly income, and alimony of $8,000 for at least 120 months. Marianne also sought an award of attorney fees.

The district court determined that it should bifurcate the trial on the complaint to vacate the property settlement portion of the decree from the trial on the complaint to modify the decree with respect to child support and alimony. Accordingly, we do not discuss Marianne's request to modify child support and alimony further. The court heard evidence on the complaint to vacate the decree with respect to the property settlement on December 6, 2011; the court heard additional evidence in 2012 on April 18 and 19, April 23, September 26 and 27, and October 11. Subsequent to the hearings on the complaint to vacate, the parties filed motions seeking attorney fees. The court heard these motions on March 22 and April 12, 2013. We have set forth relevant details of the evidence presented at these hearings in the analysis section below.

On July 11, 2013, the district court entered an order vacating the October 2010 decree as to the property settlement only. After a lengthy analysis of the evidence with respect to Donald's interest in the Custom Spine stock shares and the parties' interest in the Willows, the court found that it did not have "all of the honest facts in this case" and determined that the property settlement agreement should be vacated. The court stated that the matter would be set for retrial on the division of property, at which time the court would receive evidence and determine the value of the parties' property in order to divide the marital estate in an equitable manner. We have set forth relevant details of the court's decision on this issue in the analysis section below. The court denied Donald's motion for attorney fees; it granted Marianne's motion, in part, awarding her attorney fees of $50,000. Donald subsequently perfected his appeal to this court.

## III. ASSIGNMENTS OF ERROR

Donald asserts, restated and reordered, that the district court abused its discretion by (1) granting Marianne equitable relief when she had an adequate remedy at law, (2) failing to consider whether Marianne exercised due diligence, (3) failing to address whether the elements of fraud had been established in this case, (4) vacating the decree as to the property settlement agreement, and (5) awarding Marianne $50,000 in attorney fees.

## IV. STANDARD OF REVIEW

An appellate court will reverse a decision on a motion to vacate or modify a judgment under the statutory grounds listed in § 25-2001 only if the litigant shows that the district court abused its discretion. *Nye v. Fire Group Partnership*, 263 Neb. 735, 642 N.W.2d 149 (2002). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Breci v. St. Paul Mercury Ins. Co.*, 288 Neb. 626, 849 N.W.2d 523 (2014).

In an action for the dissolution of marriage, the award of attorney fees is discretionary with the trial court, is reviewed de novo on the record, and will be affirmed in the absence of an abuse of discretion. *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

## V. ANALYSIS

### 1. COURT EXERCISED INHERENT POWER TO VACATE DECREE

Donald's first three assignments of error concern the district court's power to vacate the decree. In civil cases, a court of general jurisdiction has inherent power to vacate or modify its own judgment during the term in which it was issued. *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014). The relevant local court rule provides that the district court's term commences on January 1 and ends on December 31 of each calendar year. See Rules of Dist. Ct. of Third Jud. Dist. 3-1 (rev. 1999). The decree in this case was entered on October 27, 2010. Marianne filed her complaint and motion seeking to vacate the decree on April 26, 2011. Because Marianne did not file her complaint to vacate within the 2010 calendar year, the court's inherent power to vacate the decree during the term in which it was issued had expired.

Nebraska case law makes it clear, however, that a court may modify or vacate a judgment after the term has expired under any of the reasons set out in § 25-2001 or under the district court's independent equity jurisdiction. See, *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995); *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994); *Portland v. Portland*, 5 Neb. App. 364, 558 N.W.2d 605 (1997). Section 25-2001 provides in relevant part:

> (1) The inherent power of a district court to vacate or modify its judgments or orders during term may also be exercised after the end of the term, upon the same grounds, upon a motion filed within six months after the entry of the judgment or order.

> (2) The power of a district court under its equity jurisdiction to set aside a judgment or an order as an equitable remedy is not limited by this section.

> . . . .

(4) A district court may vacate or modify its own judgments or orders after the term at which such judgments or orders were made . . . (b) for fraud practiced by the successful party in obtaining the judgment or order . . . .

Donald first asserts that the district court abused its discretion by granting Marianne equitable relief when she had an adequate remedy at law, but he confuses the court's power under its equity jurisdiction with the court's inherent power to vacate judgments within term as extended by statute in § 25-2001(1). To proceed in equity, the litigant must show that he or she is without a legal remedy; more specifically, that § 25-2001 could not provide adequate relief. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). Marianne filed her complaint to vacate within 6 months of entry of the decree. Accordingly, the court's inherent power to vacate or modify its decisions as extended by § 25-2001(1) had not expired and Marianne had a legal remedy available to her. A review of the court's July 2013 order shows that it exercised its power under § 25-2001(1) to vacate the property settlement portion of the decree and that it did not vacate the property settlement pursuant to its equity jurisdiction. Donald's assertions to the contrary are without merit.

Next, Donald asserts that the court abused its discretion by failing to consider whether Marianne exercised due diligence. He also asserts that the district court abused its discretion by failing to address whether the elements of fraud had been established in this case. He argues that this case should be evaluated under § 25-2001(4) and that the court should have addressed the elements of fraud in analyzing the case even when proceeding under its inherent power.

A party seeking to set aside a judgment after term for fraud under § 25-2001(4)(b) must prove that he or she exercised due diligence at the former trial and was not at fault or negligent in the failure to secure a just decision. *Nielsen v. Nielsen*, 275 Neb. 810, 749 N.W.2d 485 (2008). The Nebraska Supreme Court has stated that in order to vacate a judgment or order under § 25-2001(4) because of fraud, the movant must prove: (1) The judgment or order has been obtained or produced through fraud; (2) it is inequitable or against good conscience to enforce the judgment or order; (3) failure to secure a just decision is not the result of the vacating party's fault, neglect, or lack of diligence; and (4) the party seeking to vacate has exercised due diligence in discovering the fraud which resulted in the judgment or order in question. See *In re Estate of West*, 226 Neb. 813, 415 N.W.2d 769 (1987).

The district court's ability to modify a judgment during term is virtually unlimited. See *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008). With respect to the court's inherent power to vacate or modify its judgments during term, the Nebraska Supreme Court has stated:

> [T]he district court has power to vacate or modify its own judgments at any time during the term at which they were pronounced for the purpose of correcting error or to relieve against fraud, accident or mistake, also the power may be exercised without regard to error, fraud, accident or mistake in the absence of an abuse of discretion.

*First Nat. Bank v. First Trust Co.*, 145 Neb. 147, 149, 15 N.W.2d 386, 387 (1944). Accord *Bates v. Schuelke*, 191 Neb. 498, 215 N.W.2d 874 (1974).

In this case, the district court vacated the decree under § 25-2001(1). This section extends the time in which the court may exercise its inherent power to vacate judgments and allows the

court to vacate judgments upon motion filed within 6 months after entry of judgment upon the same grounds as it vacates judgments during term. Donald's assertions that the court in this case was allowed to vacate the decree only upon a finding of fraud are without merit.

## 2. COURT DID NOT ABUSE DISCRETION IN VACATING PROPERTY SETTLEMENT

Donald asserts that the district court abused its discretion in vacating the decree as to the property settlement agreement. The trial on Marianne's complaint to vacate was held on 7 days over the course of 10 months, generating over 1,100 pages of transcribed testimony and well over 100 exhibits. For the sake of brevity, we have summarized only the relevant evidence with respect to Custom Spine and the Willows. We have also quoted certain portions of the court's analysis of this evidence to aid our evaluation of whether the court abused its discretion in vacating the property settlement portion of the decree.

### (a) Custom Spine

The evidence presented by Donald regarding his interest in certain Custom Spine stock was lengthy and convoluted but essentially reflects an agreement by Donald to purchase and hold 45 shares of Custom Spine stock for Dr. Robert Vande Guchte in exchange for the opportunity to receive a few shares of the stock when the shares were sold at some point in the future. Donald and Vande Guchte testified at length about the nature of their agreement with respect to the stock; however, a stock purchase agreement shows that in May 2008, DHB, a South Dakota limited liability company of which Donald is the only member, purchased 45 shares of Custom Spine stock for a total of $640,000.35. The stock purchase agreement explicitly required DHB, as the buyer, to represent and warrant that the buyer "is acquiring and will hold the Shares for investment *for his or her account only* and not with a view to, or for resale in connection with, any 'distribution' thereof within the meaning of the Securities Act." (Emphasis supplied.) Both Donald and Vande Guchte testified that Marianne was present during conversations in 2008 when the arrangements for the purchase and holding of the stock were discussed; Marianne denied being present during any such conversations.

Marianne presented evidence about her discovery in late September 2010, after the divorce trial but before entry of the decree, that Donald might own some Custom Spine stock. Marianne asked her attorney to investigate further. There was considerable evidence presented about this investigation, which we do not detail here, but Marianne's evidence essentially showed that Donald and his attorney represented that Donald did not have an ownership interest in the stock, that he was holding the shares for Vande Guchte, and that while Donald had the right to claim two or three of the shares in exchange for doing so, any interest Donald had in the stock was valueless. Based on the representations that Donald had no ownership interest in the stock and that the stock was valueless, Marianne and her attorney ultimately did not pursue modification of the property settlement agreement to include whatever interest Donald had in the stock. It was not until after entry of the decree that Marianne and her attorney learned that Donald had in fact purchased the stock for $640,000.

- 5 -

With respect to Custom Spine, the district court found as follows:

The court bases its decision, primarily on [Donald's] failure to disclose and fraudulent misrepresentation of his interest in the Custom Spine stock. While [Donald] and [Vande Guchte] testified that [Donald] is merely holding the stock for [Vande Guchte], the fact remains that the stock purchase agreement lists [DHB], a South Dakota limited liability company of which [Donald] is the lone member, as the sole purchaser. . . . Despite what [Donald] and [Vande Guchte] claim, the fact remains that [DHB] is the legal record owner of 45 shares of Custom Spine stock. At most, there is a verbal agreement between [Vande Guchte] and [Donald] that [Donald] is only holding the stock and will get the value of two shares when it is sold. [Vande Guchte] cannot sell the stock, however; only [Donald] can do that. The stock purchase agreement states that the 45 shares were purchased for $640,000, and no credible evidence was presented that the stock has lost value or is valueless.

Whatever [Donald's] interest is in the Custom Spine stock, [Donald] was obligated to disclose such to [Marianne]. [Donald] failed to do so. The court does not find credible [Donald's] and [Vande Guchte's] testimony that [Marianne] was present during conversations regarding the Custom Spine stock when arrangements for the purchase and holding of the stock were first made in 2008. The court finds that [Marianne] first learned of [Donald's] interest in Custom Spine after the conclusion of the divorce trial on September 15 and 16, 2010. Neither [Marianne] nor [her] counsel at the time . . . were informed prior to entry of the Decree that the stock had been purchased for $640,000 or that [Vande Guchte] had promised [Donald] some shares in return for holding the stock. Rather, [Marianne] and [her attorney] were led to believe that the stock had no value. Clearly, [Donald] misrepresented his true interest in the Custom Spine stock and did not disclose his interest to [Marianne] prior to entry of the Decree.

The court finds that [Donald's] misrepresentation of his interest in Custom Spine constitutes grounds for vacating the Property Settlement Agreement.

(b) The Willows

Donald and Todd Mosser were members of the Willows, a limited liability company which owned two apartment complexes. In 2008, an accountant engaged by Donald discovered Mosser's misappropriation of funds and/or mismanagement of the Willows. Mosser agreed to reimburse the Willows, and this agreement resulted in a reduction of Mosser's December 2009 capital account balance by $36,707.

The parties presented considerable evidence as to their exchange of information about, and Marianne's investigation with respect to the value of, the Willows for purposes of negotiating the property settlement agreement, which we do not detail here. Pursuant to the property settlement agreement, the parties valued Donald's one-half interest in the Willows at $50,000. Marianne's evidence reflected that she was told the Mosser adjustment had already been taken into account in the $50,000 value and that she and her attorney did not learn that this was not true until after entry of the decree.

Donald presented evidence in support of his argument that the Mosser adjustment had not been concealed from Marianne and her attorney. The Willows' balance sheets for December

- 6 -

2009 and June and July 2010 note a "draw" to Mosser of $36,707. The record also includes the Willows' 2009 limited liability company tax return, as well as Donald's and Mosser's Partnership Form 1065, schedules K-1, indicating their share of income, deductions, and credits to be reported on their respective tax returns. On schedule K, under "Distributions of cash and marketable securities," the Willows' tax return shows an amount of $36,707. Under "Withdrawals & distributions," Mosser's schedule K-1 shows an amount of $36,707. There is no amount shown under the corresponding line on Donald's schedule K-1.

In February 2011, subsequent to entry of the decree in October 2010, the Willows entered into a purchase agreement with a buyer for the sale of the two apartment complexes for $10,500,000. According to Donald, the negotiations for the sale to the buyer began in January 2011. The sale resulted in a distribution of cash near the end of April to Donald of $839,892.74, plus an additional $36,707 for the Mosser adjustment, in redemption of the Willows membership interest of Donald.

With respect to the Willows, the district court found as follows:

[T]he court finds that [Donald] failed to disclose . . . the fact that the parties' half interest in the equity of the Willows was subject to a $36,707 capital account adjustment to reflect reimbursement for misuse of business funds by [Donald's] business partner, . . . Mosser . . . . [T]he court believes that [Donald's] failure to . . . disclose the Mosser adjustment was not [inadvertent].

Assuming the Willows was worth $100,000 at the time of the divorce trial, the Mosser adjustment results in the Breits receiving the first $36,707 from the equity in the business plus half of the remaining equity for a total of at least $68,353, not the $50,000 valuation stated by [Donald]. [Marianne's attorney at the time] testified that he was never informed by [the accountant] of the Mosser adjustment, even though that was the kind of information he was expected to receive from [Donald's] authorized representative with respect to the parties' finances and assets. [Marianne] also testified that she had been told by [the accountant] and [Donald] that Mosser's misappropriation of funds from the Willows had already been factored into the $50,000 value of the Willows. Neither [Marianne] nor [her attorney] knew about the Mosser adjustment until after the Decree had been entered. [Donald] argues that the Mosser adjustment was not concealed as it was noted on the balance sheets, the K1, and tax returns. . . . The references . . . , however, all denote a "distribution" or "draw" to Mosser, and the accounting effect on [Donald's] capital account is not at all clear. At most, the references reflect aggregate distributions to the partners.

[Donald] knew at the time the $50,000 valuation was placed on his 50% membership interest in the Willows that the Mosser adjustment had been made to the capital accounts. The $50,000 valuation did not reflect the Mosser adjustment, however, and [Donald] failed to disclose this information to [Marianne] and her counsel. The court finds [Donald's] failure to disclose this information amounts to a misrepresentation of the value of the asset and further grounds for vacating the Property Settlement Agreement.

In vacating the property settlement portion of the decree in this case, the district court exercised its virtually unlimited inherent power to vacate judgments during term as extended by § 25-2001, and the court was not limited to finding fraud as grounds for doing so. In his arguments, Donald attacks the credibility of the conflicting evidence presented by Marianne. As set forth above, the court based its decision to vacate the property settlement primarily on Donald's failure to disclose and his misrepresentation of his interest in the Custom Spine stock. The court found no credible evidence that the stock had lost value since its purchase or was valueless. The court specifically found that Donald's and Vande Guchte's testimony about Marianne's presence when the purchase of the stock was discussed was not credible. The court determined that Donald concealed and misrepresented facts about both Custom Spine and the Willows, such that the court did not have all of the "honest facts" available to it in accepting the parties' property settlement agreement and incorporating it into the decree. Both Donald and Marianne testified at length during the course of the trial on the complaint to vacate, were subject to cross-examination, and presented exhibits to the court reflecting their positions with respect to Donald's interest in the Custom Spine stock and the parties' interest in the Willows. The court credited Marianne's evidence over that of Donald, and its order reflects its resolution of credibility matters on conflicting factual questions. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). We find no abuse of discretion.

### 3. COURT DID NOT ABUSE DISCRETION IN AWARD OF ATTORNEY FEES

Donald asserts that the district court abused its discretion in awarding Marianne $50,000 in attorney fees. An award of attorney fees involves consideration of such factors as the nature of the case, the services performed and results obtained, the length of time required for preparation and presentation of the case, the customary charges of the bar, and general equities of the case. *Vlach v. Vlach*, 286 Neb. 141, 835 N.W.2d 72 (2013).

Marianne filed a motion for attorney fees and litigation expenses, seeking an award of $119,332 in attorney fees and $15,709.40 in litigation expenses. At the attorney fee hearing, Marianne offered the affidavit of her attorney, which detailed the services performed, date of work, time spent, and fair and reasonable value of the services rendered. Marianne also offered affidavits setting forth information about her taxable income and her monthly living expenses. As noted above, the trial on Marianne's complaint to vacate took place over the course of 10 months and generated a voluminous record. The district court awarded Marianne less than half of her requested attorney fees and did not award her any litigation expenses. We find no abuse of discretion in the award of attorney fees to Marianne.

## VI. CONCLUSION

Donald's assignments of error with respect to the district court's power to vacate the decree are without merit. The court did not abuse its discretion in vacating the property settlement agreement portion of the decree or in its award of attorney fees to Marianne.

AFFIRMED.